520 So.2d 1143 (1987)
Peggy BALL, Plaintiff-Appellee,
v.
Wayne BALL, Defendant-Appellant.
No. 86-1214.
Court of Appeal of Louisiana, Third Circuit.
December 9, 1987.
Mitchell & Dowden, James R. Mitchell, Leesville, for defendant/appellant.
Bradley, Wallace & O'Neal, David L. Wallace, Deridder, for plaintiff/appellee.
Before FORET, YELVERTON and KNOLL, JJ.
FORET, Judge.
This appeal comes from a judgment over the division of community property. Plaintiff, Peggy Ball, filed suit against her former husband, Wayne Ball, the defendant. The parties stipulated that the amount to be distributed between them was $45,469.84, and also that certain adjustments made between the parties had entitled Wayne to a credit of $7,494.79 and Peggy to a credit of $5,310.73. The trial court found that the $45,469.84 would be distributed as follows: $25,938.49 to Peggy Ball and $19,531.35 to Wayne Ball. Wayne filed this appeal and raises the following issues:
(1) Whether he was entitled to a credit for expenditures which he made concerning a cattle business and;
(2) Whether the trial court used incorrect figures for determining the amount in the retirement fund of Peggy for dividing the community funds.
We are fortunate on appeal to have the trial judge's written reasons for judgment. These reasons addressed and resolved the issues as to whether the defendant was entitled to a credit for expenditures he made concerning a cattle business. We adopt the trial judge's opinion as our own and quote from it as follows:
"The principal dispute between the parties concerns cattle expenses incurred by Mr. Ball after the divorce. When they divorced in July, 1984, the Ball's owned a herd of registered red Brahman cattle. Apparently the cattle operation had caused some tension and disagreement between the Ball's prior to their separation. As a matter of fact, Mrs. Ball testified that she divorced Mr. Ball because of the cattle.
"After the separation Mr. Ball remained at the family farm and continued to operate the cattle business just as he had done before the separation. This continued until March, 1986, when the cattle were sold at private sale as an outgrowth of this partition suit Mr. Ball claims as a credit one-half of the expenses incurred by him in operating the cattle business between July, 1984, when the divorce occurred, and March, *1144 1986, when the cattle were sold. He contends that those expenses amounted to approximately $17,480.84 and that he should be given credit for one-half or $8,740.42. On the other hand, Mrs. Ball maintains that because of the manner in which Mr. Ball conducted the cattle operation, for his benefit and without any regard for her interest, he is not entitled to any credit for expenses incurred by him.
"When the parties were divorced in July, 1984, the community was dissolved and they became equal joint co-owners of the community assets, including the herd of cattle, and they became equally liable for any community debts that were incurred prior to the divorce. Any obligations incurred by either party after the divorce could not be considered as community debts.
"As only a co-owner of the cattle, Mr. Ball was not entitled to ignore or disregard the interest of the other co-owner, Mrs. Ball. Thus, he had no right to sell or otherwise dispose of the jointly owned animals without the consent of Mrs. Ball. Neither did he have the right to obligate her for expenses incurred by him, except, perhaps, those expenses that were absolutely necessary to maintain the herd until a partition could be made. Mrs. Ball did not give him a blank check to operate the cattle business and yet, in effect, that is what he contends he had. He disposed of various animalssome were sold or traded and some were given to the children, all without any approval or consent of Mrs. Ball. Mr. Ball did not just maintain the herd until a partition could be had. He ran the operation as he saw fit! He made trips to cattle sales and shows, incurred travel expenses, purchased whatever he felt was necessary, and disposed of cattle when he saw fit, again without any prior approval or consent of Mrs. Ball.
"Notwithstanding that the children allegedly owned approximately one-third of the herd when the cattle were sold in March, 1986, none of the expenses claimed by Mr. Ball were charged to the children or deducted from their portion of the proceeds of the sale. Mrs. Ball did not consent to such an arrangement.
"As further evidence that Mr. Ball operated the cattle business for his own benefit, he filed a federal income tax return for 1984 showing a net loss in the cattle operation of $9,215.98 and a 1985 return showing a net loss of $8,226.50. Significantly, although he had a fiduciary duty to Mrs. Ball as far as the cattle were concerned, Mr. Ball claimed the entire losses on his own individual income tax returns and thereby substantially reduced his own income tax liability for those years. There is no doubt that, the way it was run by him, the cattle operation was a definite tax advantage for Mr. Ball. The full extent of that advantage cannot be determined by the court because the evidence does not establish how much the losses taken by Mr. Ball reduced his tax liability.
"Under the circumstances established by the evidence, the court does not believe that Mrs. Ball is chargeable with any of the expenses of the cattle operation between July, 1984, and March, 1986. Whatever advantages flowed from that operation benefited Mr. Ball and the children and were of no benefit whatever to Mrs. Ball. Accordingly, she should not be charged with the expenses. As previously mentioned above, the expenses claimed by Mr. Ball were not community debts because they were incurred after the community was dissolved. Therefore, Bailey vs. Jones, 439 So.2d 475 (La.App. 1st Cir.1983), [writ den., 443 So.2d 592 (La.1983) ], and Civil Code Article 2365, both cited by defendant, are not applicable in this case. Cases more in point are Lococo vs. Lococo, 462 So.2d 893 (La.App. 4th Cir.1984), writ denied 462 So.2d 889 (La.1985), and Beavers vs. Stephens, 341 So.2d 1278 (La.App. 3d Cir.1977). Those cases involve the fiduciary duty owed by one co-owner to another."
With regard to Peggy's retirement funds, the trial court, in making its decision, noted that the retirement account of plaintiff contained contributions amounting *1145 to $10,668.55.[1] This figure used by the trial court was evidently obtained from a statement of accumulated contributions as of the close of June 30, 1982.
Our review of the record shows that $102.00 per month was deducted from plaintiff's salary for contributions to her retirement fund. On June 30, 1982, her accumulated retirement contributions were $10,665.11. By the time of her divorce in July of 1984, this amount would have increased by $1,632.00 for a total of $12,297.11. We believe this figure, rather than the one used by the trial court, to be the correct amount in the retirement fund of plaintiff at the time of her divorce in July, 1984.
At the time of the divorce in July of 1984, defendant's retirement fund contributions amounted to $24,843.38, and plaintiff's contributions to her retirement fund amounted to $12,297.11. All of these contributions were made during the marriage. Thus, to equalize matters between them for the retirement contributions, plaintiff is entitled to a credit of $6,273.14, which is to be calculated into the total balance.
For the foregoing reasons, the judgment appealed from concerning expenses incurred by defendant in connection with the operation of a cattle business is affirmed. The judgment entitling plaintiff to a credit of $7,087.41 is amended to reflect a credit of $6,273.14. Costs of this appeal are assessed against both parties equally.
AFFIRMED IN PART AND AMENDED.
NOTES
[1] By subtracting $10,668.55 from defendant's retirement contributions which amounted to $24,843.38, and dividing by two, the trial judge found that plaintiff was entitled to a credit of $7,087.41.