341 So.2d 1278 (1977)
Jeannine Jones BEAVERS, Plaintiff-Appellee,
v.
M. C. STEPHENS, Defendant-Appellant.
No. 5719.
Court of Appeal of Louisiana, Third Circuit.
January 31, 1977.
*1279 J. Michael Small, of Gravel, Roy & Burnes, Alexandria, for defendant-appellant.
Michael M. Wahlder, Alexandria, for plaintiff-appellee.
Before HOOD, DOMENGEAUX and HUMPHRIES, JJ.
DOMENGEAUX, Judge.
On October 11, 1971, Lodima Trotti Stephens died, being survived by her spouse, M. C. Stephens, defendant-appellant, and her daughter by a prior marriage, Jeannine Jones Beavers, plaintiff-appellee. Mr. and Mrs. Stephens owned, among other things, several parcels of real property, numerous pieces of farm and construction equipment, and a profitable business known as "Steve's Package Liquor Store". After his wife's death Mr. Stephens continued to operate the liquor store and derive the profit therefrom. Apparently, there was no agreement between Mr. Stephens and Mrs. Beavers as to the operation of this business, and the latter took little or no part in the management of same.
On March 29, 1973, plaintiff and defendant herein entered into several transactions. Mrs. Beavers conveyed her interest in certain pieces of real estate (including the liquor store) to Mr. Stephens for the sum of $25,722.75. The recitation in the deed indicates that the sale was for cash paid on that date. Additionally, the parties entered into an agreement containing approximately ten provisions whereby they attempted to partially settle the estate of the decedent.
The agreement provided, in part: "It is agreed that Mr. Stephens will owe Mrs. Beavers for one-half of store profits from date of death of Mrs. Stephens until date of deed from Mrs. Beavers to Mr. Stephens. An accounting will be rendered within six months from date hereof."
Other portions of the agreement dealt with disputed and undisputed claims which will be discussed briefly hereinafter.
As evidence of the obligations owed to Mrs. Beavers as set forth in the agreement, defendant executed a promissory note in the amount of $50,000.00 payable "as per agreement" and paraphed "Ne Varietur" for identification with an act of mortgage *1280 given as security for said obligations. The mortgage, in the amount of $50,000.00, encompassed all of the immovable property transferred from plaintiff to defendant on that same date. It appears that the amount of the note was intended to represent defendant's maximum potential obligation, to be determined after the accounting.
Apparently dissatisfied with the manner in which defendant attempted to comply with the agreement, plaintiff filed suit No. 26,305 (our Docket No. 5719 on appeal) on June 8, 1973, captioned "Suit for Money Owed", alleging, inter alia, that defendant's accounting of the profits from Steve's Package Liquor Store was incorrect and further that defendant was in possession of certain movable property to which plaintiff was entitled one-half. On September 12, 1973, plaintiff instituted suit number 26,494 (our Docket No. 5720 on appeal, 341 So.2d 1282), to enforce the obligation evidenced by the promissory note, for recognition of her security rights under the mortgage, and to foreclose on same. The two suits were consolidated for trial and remain as such on appeal. The trial judge rendered one judgment for both suits, in plaintiff's behalf in the amount of $52,438.50, and defendant has appealed.[1]
We note at this point, that while the primary issues with which these lawsuits are concerned is the amount owed plaintiff by defendant for the liquor store profits, several other incidental issues were decided by the trial judge. These matters concern a government contract owned by defendant and a portion of the decedent's funeral expenses. Since none of these incidental issues have been raised on appeal we restrict ourselves to the matter of the liquor store profits.
The record contains the following profit and loss data for Steve's Package Liquor Store:

 1970
Gross Receipts ............... $ 228,234.00
Cost of Goods Sold ........... $ 188,537.00
Gross Profit.................. $ 39,697.00
Net Profit ................... $ 24,711.00
 1971
Gross Receipts ............... $ 280,426.00
Cost of Goods Sold .......... $ 224,688.00
Gross Profit ................ $ 55,738.00
Net Profit ................... $ 27,270.00
 1972
Gross Receipts ............... $ 260,925.00
Cost of Goods Sold ........... $ 218,143.00
Gross Profit ................. $ 42,782.00
Net Profit ................... $ 8,799.00
 1973
 (First Quarter)
Gross Receipts ............... $ 49,089.00
Cost of Goods Sold ........... $ 41,732.00
Gross Profit ................. $ 7,357.00
Net Profit (Loss) ............ $ - 1,178.00

Our calculations reveal the following net profit percentages: 1970: 10.8%; 1971: 9.7%; 1972: 3.3%; and 1973 (First Quarter): minus 2.3%. Neither the defendant nor two accountants who testified at trial were able to sufficiently account for the market decline in net profit percentages for the years in question.
The trial judge found that there was a form of partnership existing between plaintiff and defendant after the death of decedent and that Stephens owed Mrs. Beavers a fiduciary duty to properly manage the affairs of the business.
We feel that the fiduciary obligation owed by defendant to plaintiff was not founded upon the existence of a partnership but rather upon the principle of negotiorum gestio. The record does not indicate that plaintiff and defendant ever entered into an agreement whereby the latter was to manage Steve's Package Liquor Store on behalf of both parties. Rather, it appears that Mr. Stephens merely continued to operate the business as he had in the past, *1281 with the tacit approval of Mrs. Beavers. Of course, in so acting, Mr. Stephens necessarily managed the one-half interest which Mrs. Beavers owned in the business.
LSA-C.C. Article 2295 provides:
"When a man undertakes, of his own accord, to manage the affairs of another, whether the owner be acquainted with the undertaking or ignorant of it, the person assuming the agency contracts the tacit engagement to continue it and to complete it, until the owner shall be in a condition to attend to it himself; he assumes also the payment of the expenses attending the business.
He incurs all the obligations which would result from an express agency with which he might have been invested by the proprietors." (Emphasis added)
LSA-C.C. Article 2298 sets forth the duty owed by the negotiorum gestor:
"Art. 2298. Degree of care required of manager; prudent administrator
Art. 2298. In managing the business, he is obligated to use all the care of a prudent administrator.
Yet, where circumstances of friendship or of necessity have induced a person to undertake the management, that consideration may authorize the judge to mitigate the damages which may arise from the faults or the negligence of the manager."
We are of the opinion that although plaintiff and defendant were in essence co-owners of Steve's Package Liquor Store, a going concern, the defendant nonetheless undertook the task of managing "the affairs of another" when he continued to operate the business which included Mrs. Beaver's one-half interest therein. We take cognizance of the article at 7 Tul.Law Review 253 and several old cases cited therein for the proposition that the relationship of negotiorum gestio cannot exist between co-owners. Those cases are factually distinguishable from the present litigation and are thus inapplicable to this situation.
Based upon the provisions of LSA-C.C. Article 2298, we find that defendant was possessed of a fiduciary duty to properly and efficiently manage the affairs of Steve's Package Liquor Store. The serious decline in profits of the business under his management, absent a sufficient explanation of the causation thereof, indicates a breach of that fiduciary duty, and the trial judge so found. Thus defendant must account to and compensate plaintiff for losses which the business incurred due to his mismanagement or negligence.
The trial judge used a formula by which he added the gross profits for the years 1971, 1972, and 1973 (First Quarter), and awarded plaintiff one-half that sum. We feel that the district judge erred in using the figure of $55,738.00 as the gross profits for the entire year of 1971 since Mrs. Beavers' interest in the business vested only as of the date of her mother's death on October 11, 1971. Furthermore, had Mrs. Beavers been an actual practicing partner in the business she would not have received the gross profits from same, but rather her income would have been limited to net profits. For these reasons, we choose to apply a different formula in calculating the amount due plaintiff by defendant.
We find that the figures for 1971 reflect those of a typical year in the operation of Steve's Package Liquor Store. Mr. Stephens operated the business in 1971 with the assistance of decedent for several months but finished out the year without her help. Under this operation Steve's Package Liquor Store showed a net profit percentage of 9.7%, and we choose that figure as a reasonable income percentage for the business. Applying said percentage to the gross receipts for the period from October 11, 1971, through March 29, 1973, we arrive at the following net profit figures:

*1282
October 11, 1971
 December 31,1971 ............. $ 7,127.00
January 1, 1972
 December 31,1972 ............. $ 25,310.00
January 1, 1973
 March 29, 1973 ............... $ 4,762.00
 ___________
 Total .............. $ 37,199.00
Amount Due Plaintiff (one-half
 interest) .................... $ 18,599.50

Defendant claims that he is entitled to compensation for his services rendered in managing the affairs of Steve's Package Liquor Store for the period in question. The trial judge rejected this claim, and we agree. Absent an agreement, a co-owner cannot claim such compensation for managing jointly owned property. See Murphy v. Murphy, 136 La. 17, 66 So. 382 (La.1914); Sharp v. Zeller, 114 La. 549, 38 So. 449 (La.1905); and Conrad v. Burbank, 25 La. Ann. 112 (La.1873).
For the above and foregoing reasons the judgment of the district court is amended so as to reduce the amount awarded plaintiff from $52,438.50 to $18,599.50, and as so amended is affirmed. Costs on appeal are assessed in the proportions of one-half to each party.
AFFIRMED, AS AMENDED.
NOTES
[1] The judgment is silent upon the matter of the recognition of the mortgage and enforcement of same.