596 So.2d 1308 (1991)
Patricia Ann Faust KYSON, Plaintiff-Appellant,
v.
Gene Douglas KYSON, Defendant-Appellee.
No. 22586-CA.
Court of Appeal of Louisiana, Second Circuit.
August 21, 1991.
On Rehearing September 19, 1991.
Writ Denied May 22, 1992.
*1309 Love, Rigby, Dehan, McDaniel & Goode by Kenneth Rigby, Shreveport, for plaintiff-appellant.
A. Richard Snell, Bossier City, for defendant-appellee.
Before NORRIS, HIGHTOWER and STEWART, JJ.
STEWART, Judge.
Plaintiff, Patricia Ann Faust Kyson, appeals from a judgment separating community property of the marriage between plaintiff and defendant, Gene Douglas Kyson. We remand.

FACTS
Patricia Ann Faust and Gene Douglas Kyson were married on January 30, 1981. On February 2, 1982, Gene Kyson executed an affidavit of paraphernality in accordance with LSA-C.C. Art. 2339 which reserved the rents from certain separate property as his separate property. That affidavit was recorded in Bossier Parish, the situs of his separate immovable property, on February 5, 1982.
*1310 On September 24, 1986, Mrs. Kyson filed a petition for divorce from Gene Kyson and was granted a divorce on March 4, 1987.
Defendant filed a petition to partition the community assets on June 26, 1987, attaching a detailed descriptive list thereto. In response, plaintiff filed a set of interrogatories and a request for production of documents and thereafter filed her answer and detailed descriptive list. Plaintiff additionally filed a traverse to defendant's detailed descriptive list of assets and liabilities.
The matter was presented to the district court with testimonial and documentary evidence, including dozens of exhibits entered into evidence by plaintiff and defendant. Plaintiff appeals the district court judgment which held that rental income that her ex-husband, defendant, Gene Douglas Kyson, received from separate property which he owned, managed, repaired, and oversaw was his separate property. She also complains that the district court incorrectly characterized a bank account and an investment account as separate property and that the district court refused to find that defendant's early termination of a ten-year lease violated his fiduciary duty to properly maintain a community asset. Finally, she asks this court to render a judgment in her favor for one-half of the allegedly community income for which Mr. Kyson failed or refused to account.

DISCUSSION
Community property comprises: property acquired during the existence of a legal regime through the effort, skill, or industry of either spouse ... all other property not classified by law as separate property. LSA-C.C. Art. 2338.
However, the natural and civil fruits of the separate property of a spouse, minerals produced or attributable to a separate asset, and bonuses, delay rentals, royalties, and shut-in payments arising from mineral leases are community property. A spouse may reserve them as separate property by declaration made in an authentic act or in an act under private signature duly acknowledged. LSA-C.C. 2339.
Fruits are things that are produced by or derived by another thing without diminution of its substance. There are two kinds of fruits; natural fruits and civil fruits. Natural fruits are products of the earth or of animals. Civil fruits are revenues derived from a thing by operation of law or by reason of a juridical act, such as rentals, interest, and certain corporate distributions. LSA-C.C. Art. 551.
In her first assignment of error, Mrs. Kyson complains that rental funds received by her husband were community property, contrary to the trial court's finding.
Neither party contests the fact that the income in dispute is qualified as rental income received from the separate property of Mr. Kyson. The parties, however, dispute the classification of this income. Gene Douglas Kyson argues that under a clear wording of LSA-C.C. Art. 2339, when he filed an affidavit of separation of property, the rental payments became separate property. Mrs. Kyson, however, argues that the rental income from the separate property was produced primarily as a result of the effort, skill, or industry of Mr. Kyson and therefore the filing of the affidavit under Art. 2339 does not have the effect of rendering the payments separate property.
The testimony of Mr. Kyson indicates that he considered himself a "rental manager." He testified that he handled and managed the property which included responsibilities of finding tenants, collecting the rent, and making repairs and improvements on the property. The total income produced by the rental properties from January 30, 1981 to September 24, 1986 amounted to $99,150.44. The remainder of income not relating to rental properties for the same period of time amounted to $54,714.00.[1]
Spaht and Hargrave discuss the issue in this case in their treatise on Louisiana civil law:
*1311 Fruits are "things that are produced by or derived from another thing without diminution of its substance." Civil code examples of natural fruits are "products of the earth or of animals." Civil fruits include "revenues derived from a thing by operation of law or by reason of a juridical act, such as rentals, interest, and certain corporate distributions." In the simplest case, production of these fruits would not involve labor or industry of a spousethe typical passive investment. However, it is quite common for many investments to combine one spouse's separate capital with community labor to produce fruits. In such an instance, proration is necessary and an often less than precise allocation is required.
16 K. Spaht and W.L. Hargrave, Louisiana Civil Law Treatise, "Matrimonial Regimes" § 3.5 at 48 (1989) [hereinafter cited as Spaht & Hargrave].
While the money received by Mr. Kyson qualifies as rental revenue, the rental payments were the result of a substantial amount of time spent by Mr. Kyson on managing the rental properties.
In Paxton v. Bramlette, 228 So.2d 161 (La.App. 3d Cir.1969), the Third Circuit Court of Appeal addressed certain issues of whether salaries received by the wife during a marriage were separate or community property. The wife filed a written instrument declaring her intention to administer her paraphernal property for her separate benefit. She formed a realty company and received an annual salary of $1,800 from the corporation in addition to rental payments. She personally performed most of the managerial duties of the operation of the realty company, maintained a desk where the realty company was housed, collected all rents, deposited them in the bank, handled all the maintenance repairs of the various buildings, and generally held most responsibility for the realty company. The wife additionally received a salary of $12,000 from a separate company in which she owned 82 percent of the stock, but received no dividends. She maintained a desk in the building of the corporate offices but had no specific duties. The court held that the $1,800 received from the realty company was community property and also found that the $12,000 paid to her annually were earnings derived from her labor and industry because she performed substantial services to the corporation, in addition to reporting these sums on her federal income tax returns as salary. The court therefore classified the $12,000 as salary which was property of the community.
While Mrs. Kyson cites Paxton for the proposition that the rent received by Mr. Kyson should be declared community property, we do not read Paxton as so holding. There, the wife received a salary from the realty company and the court found this salary to be community property. The court specifically addressed the classification of this income but no mention was made of the rental income received by her after the day of the filing of the affidavit. Thus, on these facts, the cases are therefore distinguishable. However, Paxton is useful in an analysis of the present situation based upon its holding that the $12,000 salary tendered in lieu of dividends was classified as community earnings due to the performance of "substantial services" to the corporation which derived from her labor and industry. While Paxton was decided under prior law, namely LSA-C.C. Art. 2386, we find that the rationale underlying this decision is persuasive to a resolution of the case at hand.[2] Mr. Kyson, by his own admission, engaged in the trade of *1312 rental manager. He spent much of his time taking care of that property and seeing to it that it was properly managed. At no time did he hire any other property manager to do the work. As such, this investment combined Mr. Kyson's separate capital with his community labor which resulted in the production of fruits. Like in Paxton, he performed "substantial services" to this rental business which derived from his labor and industry. Certainly, however, even if Mr. Kyson had not participated in the rental management he would have received some rentals as a passive investment. We find this to be a case in which "separate capital is combined with community labor to produce fruits." Spaht & Hargrave, supra. Thus, a determination must be made as to the amount of labor attributed to the investment. An appropriate analysis is to examine the relative contributions of labor and capital to the funds involved and a pro ration of the funds according to these contributions. Paxton v. Bramlette, supra; Comment, Symposium: Community Property, "Classification of Property," 25 La.L.Rev. 95 at 104 (1964); Morrow, Matrimonial Property Law in Louisiana, 34 Tul.L.Rev. 3 (1959). Also, Spaht & Hargrave, supra. Considerations include, the employee's qualifications, the nature of the employee's work, size and complexity of the business, comparison of salaries paid in comparison with gross and net income, prevailing economic conditions, prevailing rates of compensation for comparable positions, salary policy of employer as to all employees and comparison with salaries for previous years. Unfortunately, we are unable to determine from the record before this court the value of Mr. Kyson's labor in order that the required proration of funds can be made. We therefore find it necessary to remand to the trial court for this determination based upon the aforementioned considerations. Mohr v. Mohr, 374 So.2d 203 (La.App. 4th Cir.1979). While the passive rental income remains separate property after the filing of the declaration by Mr. Kyson, the value of his labor invested in producing the passive rentals is community property in accordance with LSA-C.C. Art. 2338 and is subject to Mrs. Kyson's claim.

CONCLUSION
Based upon the foregoing, we find it unnecessary at this juncture to address the remaining issues on appeal. Once the trial court completes its proration of the rental income, it is directed to reexamine any of the remaining issues raised on appeal that are affected by the proration. This case is remanded to the trial court for resolution in accordance with this opinion.
REMANDED.

ON REHEARING
Before NORRIS, LINDSAY, HIGHTOWER, BROWN and STEWART, JJ.
STEWART, Judge.
Patricia Ann Faust Kyson appealed a judgment which partitioned the community property of her marriage to appellee, Gene Douglas Kyson. In our original opinion we addressed appellant's first assignment of error regarding the classification of rental income derived from appellee's separate rental property and remanded the case for further development of the record. We granted Mrs. Kyson's application for rehearing and ordered additional briefing and oral argument before a five-judge court. *1313 On rehearing, we amend and, as amended, affirm the trial court judgment.

PROCEDURAL HISTORY
Patricia Ann Faust and Gene Douglas Kyson were married on January 30, 1981. On February 2, 1982, Gene Kyson executed an affidavit of paraphernality in accordance with LSA-C.C. Art. 2339 which reserved the rents from certain separate property as his separate property. That affidavit was recorded in Bossier Parish, the situs of his separate immovable property, on February 5, 1982.
On September 24, 1986, Mrs. Kyson filed a petition for divorce from Gene Kyson and was granted a divorce on March 4, 1987.
Mr. Kyson filed a petition to partition the community assets on June 26, 1987, attaching a detailed descriptive list thereto. In response, Mrs. Kyson filed a set of interrogatories and a request for production of documents and thereafter filed her answer and detailed descriptive list. She additionally filed a traverse to Mr. Kyson's detailed descriptive list of assets and liabilities.
The matter was presented to the district court with testimonial and documentary evidence, including dozens of exhibits entered into evidence by plaintiff and defendant. Mrs. Kyson appealed the district court judgment which held that the rental income which her ex-husband, Gene Douglas Kyson, received from separate property which he owned, managed, repaired, and oversaw was his separate property. She also complained that the district court improperly characterized a bank account and an investment account as separate property and that the district court incorrectly refused to find that defendant's early termination of a ten-year lease violated his fiduciary duty to properly maintain a community asset. Finally, she asked this court to render a judgment in her favor for one-half of the alleged community income for which Mr. Kyson failed or refused to account.
In our original opinion, we concluded that Mr. Kyson had performed `substantial services' to generate the rental income and remanded the matter for a factual determination of the value of Mr. Kyson's labor, followed by a proration of the rental income to each party. We pretermitted disposition of the remaining assignments of error, pending the factual findings on remand.
At the request of appellant, Patricia Ann Faust Kyson (Taylor), we granted rehearing in this matter in order to reconsider our finding that, while the passive rental income remains separate property after the filing of the declaration by Mr. Kyson, the value of his labor invested in producing the passive rentals is community property and is subject to Mrs. Kyson's claim.
On rehearing, Mrs. Kyson agrees with our original factual finding that substantial services were rendered by Mr. Kyson as to his separate properties but she vigorously protests our order for proration of the rentals. Instead, she urges us to classify all the rental income as community property. Mrs. Kyson also requests that we address the remaining assignments of error.

DISCUSSION
Assignment of Error No. 1
In her first assignment of error, Mrs. Kyson complains that rental funds received by her husband were community property, contrary to the trial court's finding. She contends that Mr. Kyson's labor and industry was so substantially expended upon his separate property as to transform the character of the rentals received during the marriage from separate to community.
Neither party contests the fact that the income in dispute is rental income received from the separate property of Mr. Kyson. The parties, however, dispute the classification of this income. Mr. Kyson argues that under the clear wording of LSA-C.C. Art. 2339, when he filed an affidavit of separation of property, the rental payments became separate property. Mrs. Kyson, however, argues that the rental income from *1314 the separate property was produced primarily as a result of the effort, skill, or industry of Mr. Kyson and therefore the filing of the affidavit under Art. 2339 does not have the effect of rendering the payments separate property. In reexamining our original disposition of this assignment, we are necessarily called upon to review the factual and legal premises upon which our holding was based.
Our conclusion that Mr. Kyson rendered "substantial services" was based in part on Mr. Kyson's self-designation as a "rental manager", along with our review of the total amount of rental income he received during the marriage, as compared to the total amount of income he received from his contract labor job with an auto body repair shop for the same time period. The testimony of Mr. Kyson indicates that he considered himself a "rental manager." His tax returns also listed his occupation as rental manager. He testified that he handled and managed his properties which included responsibilities of finding tenants, collecting the rent, and making repairs and improvements on the properties.
Through testimony and documentary evidence, Mrs. Kyson attempted to show mathematically that the rental income was so disproportionate, when compared to the contract labor income, that it must necessarily follow that all or part of the rental income resulted from Mr. Kyson's labor and industry. She presented the testimony and written summary of Harold E. Roberts, Jr., CPA, who analyzed the Kysons' 1981 through 1986 tax returns. Roberts found that during the marriage, Mr. Kyson's total rental income, as he calculated in his summary, was $110,916. According to Roberts, the rentals represented 67 per cent of Mr. Kyson's $165,630 total income during the marriage, while only $25,611 (15.5 per cent) of that total income was attributable to his employment as a contract wrecker and auto mechanic for Jack's Auto Repair.
On these bases, we concluded that Mr. Kyson's labor and industry were a substantial factor in generating the rental income, therefore, Mrs. Kyson was entitled to a prorated share in the rentals. We then remanded the case for determination of the value of Mr. Kyson's labor and for a proration of that portion of the rentals which was attributable to his labor, skill or industry so that the prorated value of "... property acquired ... through the effort, skill, or industry of either spouse", LSA-C.C. Art. 2338, could be allotted to Mrs. Kyson.
Upon reconsideration, we conclude that the most appropriate methodology to resolve this dispute over classification of the rental income is to carefully review the actions of Mr. Kyson in the light of each of the rental properties, rather than to review the properties as a single mass. Mr. Kyson owned four properties during the marriage and it does not necessarily follow that what may have been substantial labor as to one property is substantial as to another or to all the properties.
The only testimony regarding expenditure of time or physical labor and industry on the separate properties is that of Mr. Kyson. When asked specifically how much time he spent on a given endeavor regarding the properties, Mr. Kyson was unable to give any definite time periods or amounts of time expended. With regard to the time and labor spent on his contract labor as compared to that spent on his rental properties, Mr. Kyson testified as follows:
Q. Mr. Kyson, if we can compare time, if you will. How does your time spent on your rental properties in terms of securing renters, collecting rent, making what repairs needed to be made, how does that compare with the contract labor time you spent at the garage?
A. There's no comparison.
Q. Tell me how.
A. Because the contract labor, I was out there almost every day. Where with the rent, was very seldom I had to do anything with that other than when *1315 the renter would move out of the house and, then, the other building, I didn't do anything except the minor repairs.
Q. Okay. So, the majority of your time, if not more, was spent at the contract labor, the garage work?
A. Correct.
Our review of his tax returns reveals that, except for the 1981 return, Mr. Kyson's contract labor income is unsupported by documentation from Jack's Auto Repair. However, there is no testimony or other evidence of record from Jack's Auto which contradicts Mr. Kyson's testimony.
Mrs. Kyson conceded that she knew very little concerning Mr. Kyson's business affairs. He owned properties located at 1930 E. Texas, 1109 Benton Road, 1111 Benton Road, and 1315 Martin Lane. It is uncontested that all locations except the Martin Lane property were purchased prior to the marriage. Testimony and other evidence indicates that the Martin Lane property was purchased with separate and paraphernal funds.
According to the testimony, Mr. Kyson handled minor repairs such as painting a room or mowing grass, himself. He did very little to the 1930 E. Texas property, because it remained occupied during most of the marriage. Mr. Kyson had plate glass windows installed and had the air conditioner repaired, but had no major expenditures at that address prior to the termination of the community.
Mr. Kyson listed 1109 and 1111 Benton Road together on his tax returns. He had storm windows installed at 1111 Benton Road, and had a tree removed. These were residential properties, one of which was occupied by his son. Mr. Kyson said the majority of work on any of the properties occurred when there was a vacancy. This work involved cleaning, maintenance, painting, hanging a sign on a tree to indicate the vacancy, and meeting prospective renters to show the house. During the marriage, only one of the properties became vacant.
The Martin Lane property was purchased in 1982 and sold in 1983. The record contains little else regarding this property, other than information reflected in the respective tax returns.
When asked what percentage of total rents received was attributed to repairs, Harold Roberts, Jr., testified that $8,325, approximately 5.87 per cent of the total rents received, was represented as repair expenses during the applicable time period. James Pazzaglia, Mr. Kyson's accountant, testified that the expense item of repairs, reported on the tax returns does not include repairs, maintenance, or improvements physically made by Mr. Kyson. Those items reflect only the money spent for the repairs. In general, labor and industry was not reflected in the tax returns. Mr. Kyson apparently kept no time records regarding his management of the rental properties. No evidence in the record indicates that he spent any more time managing his properties than that to which he testified. Even regarding the $8,000 plus in repairs, he presented cancelled checks showing that he paid others to do much of the work associated with the reported repair figures.
In short, the primary evidence regarding labor and industry of Mr. Kyson is his own testimony, as outlined above. Although Mr. Kyson testified his occupation was that of rental manager, the record does not show that the disproportionality of rentals, when compared to other income, was necessarily due to his "substantial labor". We are unable to discern from the record sufficient quantification of Mr. Kyson's time and labor associated with the disputed rental income from which we can draw any meaningful conclusion. The trial court made no factual finding in this regard.
The evidence of record militates against the factual conclusion urged by Mrs. Kyson and initially adopted by this court that the rental income generated from Mr. Kyson's four separate properties necessarily resulted from Mr. Kyson's investment of substantial labor and industry into the properties. *1316 While greater income was derived from the separate property than from his contract labor job, it is equally reasonable to conclude that the quantity of rental income was the result of the individual properties themselves and the circumstances of the real estate market, rather than as a result of Mr. Kyson's labor and industry.
Having reconsidered the bases for the holding in our original opinion, we now examine anew appellant's first assignment of error.
Community property comprises: "property acquired during the existence of a legal regime through the effort, skill, or industry of either spouse; ... and all other property not classified by law as separate property." LSA-C.C. Art. 2338.
Fruits are things that are produced by or derived by another thing without diminution of its substance. Civil fruits are revenues derived from a thing by operation of law or by reason of a juridical act, such as rentals, interest, and certain corporate distributions. LSA-C.C. Art. 551 (emphasis added).
Although the civil fruits of a spouse's separate property are community property, a spouse may reserve them as separate property by declaration made in an authentic act or in an act under private signature duly acknowledged. LSA-C.C. Art. 2339.
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. LSA-C.C. Art. 9. Laws on the same subject matter must be interpreted in reference to each other. LSA-C.C. Art. 13.
Mr. Kyson's filing of the affidavit of separate and paraphernality in February of 1982 effectively reserved unto him the subsequent civil fruits, i.e. rentals, as separate property in accordance with LSA-C.C. Art. 2339 and Art. 551. Mr. Kyson's personal management efforts toward these four properties during the marriage cannot be viewed on this record as so extraordinary as to result in his abdication of the rentals he expressly reserved unto himself.
Mrs. Kyson argues that the filing of the affidavit did not reserve the rentals as Mr. Kyson's separate property because, under Art. 2338, that part of the rentals acquired through his effort, skill, or industry transformed the rentals into community property. The language in articles 551 and 2339 is clear and unambiguous. Rentals are civil fruits which may be reserved to Mr. Kyson by the affidavit which he filed. By filing the affidavit of paraphernality in accordance with Civil Code Article 2339, Mr. Kyson satisfied the codal prerequisite and reserved unto himself the civil fruits of his separate property. When we view Art. 2338 in reference to Art. 2339, we find that, contrary to the claims of Mrs. Kyson, the general definition in Art. 2338 is inapplicable to the resolution of this case because the instant facts fall under the more specific language in Art. 2339. To the extent that our earlier opinion held to the contrary, we expressly recall the opinion. We hold that the trial court's conclusion that the rentals were the separate property of Mr. Kyson is neither manifestly erroneous nor clearly wrong.
For the foregoing reasons, we affirm the trial court judgment with respect to this assignment of error.
We now consider the remaining assignments of error which were not addressed in our original opinion.

Assignments of Error Nos. 2 and 3
Mrs. Kyson complains that the district court improperly characterized a bank account and an investment account as separate property. She asserts that, because community funds were commingled in Mr. Kyson's Bossier Bank & Trust account, all funds in that account, and in his E.F. Hutton account which received deposits from the Bossier bank account, became community funds.
The funds in question are presumed to be community funds. LSA-C.C. Art. *1317 2340. The presumption of the community nature of the funds in the bank account and in the E.F. Hutton account may be rebutted by proving that they were separate funds or a mixture of funds where the community's contribution is inconsequential when compared to the amount of separate funds. LSA-C.C. Art. 2341. Where separate and community funds are commingled indiscriminately so that separate funds cannot be identified or differentiated from the community funds, all the funds are characterized as community funds. Curtis v. Curtis, 403 So.2d 56 (La.1981).
The trial court had direct evidence in the form of Mr. Kyson's testimony, corroborated in part by cancelled checks and other documents, that he paid over $90,000 in community expenditures. The following is a non-exclusive list of items included in his list of community expenditures for which no contradictory evidence was adduced:

1985 Dodge van $13,095.19
Honda automobile 3,000.00
1982 Pontiac Firebird 3,800.00
1977 Toyota 3,974.32
Health insurance 698.00
Insurance on vehicles 4,008.00
IRS taxes due 7,916.00

Mr. Kyson's only community income was from his contract labor with Jack's Auto Repair. The Kysons' federal income tax returns reflect that his annual income from the contract labor was as follows:

 1981-$3,167 1983-$9,389 1985-$4,481
 1982-$4,165 1984-$3,572 1986-$1,500

The summary of the E.F. Hutton account, prepared by Mrs. Kyson's expert witness, Harold Roberts, Jr., shows, in part, the following information:

 Deposits
April 1981 -$25,000
September 1984 -$16,000
September 1985 -$ 7,500
September 1986 Balances

$ 3,977 in Cash Reserve Management $33,238 in Hutton Government Fund
Mr. Kyson, although earlier indicating to the contrary, testified that his contract labor was always paid in cash and did not go into the Bossier bank account from which he often transferred funds into his E.F. Hutton account. He testified that the funds in each account came from (1) rental income from the separate property, (2) proceeds from the sale of separate property, (3) an inheritance from his father, and (4) certificates of deposit which predated the marriage, but matured during the marriage. The trial court apparently accepted this testimony as true.
On this record, we do not find that the trial court was clearly wrong in its credibility determinations, or factual conclusions, drawn from Mr. Kyson's testimony. The record contains support for the trial court's conclusion that commingling did not transform the separate funds in either account into community property. Documentary evidence revealed that the annual income from contract labor was much less than the deposits in the E.F. Hutton account. Due to the small amount of Mr. Kyson's community income, as compared to his separate income and as compared to the E.F. Hutton deposits, coupled with the fact that the Kysons maintained separate bank accounts, we conclude that the trial court's finding that these accounts maintained their separate character was not manifestly erroneous.

Assignment of Error No. 4:
Mrs. Kyson's last assignment of error is in two parts: (1) the trial court erred in not awarding her one-half of the Dinwiddie lease rentals collected by Mr. Kyson, a sum equal to $4,350; and (2) the trial court erred in not awarding her one-half of the lost net lease payments resulting from Mr. Kyson's bad faith cancellation of this lease, a sum equal to $47,175.
During the marriage on May 1, 1986, Mr. Kyson entered into a written lease agreement with his former wife, Barbara Dinwiddie, of the property known as 2140 East Texas Street, Bossier City, Louisiana for a period of ten years commencing May 1, *1318 1986 and ending April 30, 1996 (Exhibit P-1). The rental was $500 per month and specifically granted the lessee, Mr. Kyson, the authority to assign or sublet the property without Dinwiddie's written consent. The agreement further provided that Mr. Kyson had the option to terminate the lease without further obligation, as long as he gave six months notice of intent to terminate the lease.
In August 1986, Mr. Kyson sublet the building to Mr. and Mrs. Horton for $1,200 per month. At the end of the first year, the monthly amount of the sublease was increased to $1,350 per month. The sublease was not reduced to writing and testimony revealed that it was a month-to-month agreement with the Hortons.
The Kysons' March 4, 1987 judgment of divorce resulted in the termination of the community effective September 24, 1986, the filing date of Mrs. Kyson's action for divorce. LSA-C.C.P. Art. 159. By letter dated March 5, 1987 (Exhibit P-3), Mr. Kyson gave Mrs. Dinwiddie notice of his intent to terminate the lease under paragraph 14 of the lease agreement. The lease was terminated in September 1987, thus the underlying sublease was also cancelled. After September 1987, the Hortons continued to occupy the property and paid the $1,350 rent directly to Mrs. Dinwiddie.

Rental income received.
The trial court properly found that the Dinwiddie lease and sublease were community property, but neither awarded Mrs. Kyson any of the rents collected on the sublease nor obligated her for the payments made on the written lease agreement. In effect, the trial court allocated to Mr. Kyson the entire net income from the lease and sublease. She claims entitlement to half of the net rentals he received prior to the termination of the lease.
1. Assets of the community
We shall discuss first the rentals received prior to termination of the community. The legislature has specified the broad parameters within which the trial court has wide discretion:
[R.S. 9:]2801. Partition of community property and settlement of claims arising from matrimonial regimes
(c) The court shall allocate or assign to the respective spouses all of the community assets and liabilities. In allocating assets and liabilities, the court may divide a particular asset or liability equally or unequally or may allocate it in its entirety to one of the spouses. The court shall consider the nature and source of the asset or liability, the economic condition of each spouse, and any other circumstances that the court deems relevant....
. . . .
Mr. Kyson sublet the Dinwiddie property to the Hortons in August 1986 for a net rental income of $700 per month. The record reveals that Mr. Kyson continued receiving net monthly rental income of $700 from the September 24, 1986 termination of the community through July 1987, and $850 from August 1987 through the September 1987 termination of the lease. Mrs. Kyson concedes that Mr. Kyson spent $6,456.91 on repairs to the leased property during the existence of the community property regime, $5,901.85 of which was expended prior to entering the oral sublease with the Hortons.
Faced with a reimbursement claim from Mr. Kyson,[1] the trial court found that the net income derived from the Dinwiddie lease was both marginal and expended largely on community debts and obligations. The net rentals derived from the lease during the existence of the community was approximately $1,400. As fruits of a community asset, these funds were community property.
As noted in the foregoing assignments, Mr. Kyson's community income was *1319 $1,500 in 1986. In light of Mr. Kyson's community income during the marriage, it appears that the $6,456.91 in repair costs during 1986, as well as the other undisputed community expenditures set forth in the foregoing discussion, were made from his separate income. With regard to the rentals received during the community regime, this award of the entirety of the net rental income to Mr. Kyson amounts to recovery from Mrs. Kyson, to the extent of community assets, of one-half of Mr. Kyson's separate property which was expended to pay repair costs associated with the community lease agreement. See Oliver v. Oliver, 561 So.2d 908 (La.App. 2d Cir.1990). We find no error in this award to Mr. Kyson of the $700 from Mrs. Kyson's patrimonial mass.
We conclude the award to Mr. Kyson of these community funds, i.e., both $700 shares of the community rental income, was within the trial court's § 2801 discretion to allocate a community asset in its entirety to one of the spouses.

2. Assets of the former community
After the termination of the community on September 24, 1986, Mr. Kyson received $14,700 of community rentals. Upon giving him credit for the $500 per month he paid Mrs. Dinwiddie, a total of $6,000, an amount of $8,700 remained. Mrs. Kyson requests judgment against him in the amount of $4,350, one-half of that remaining amount.
A spouse owes an accounting to the other spouse for community property under his control at the termination of the community property regime. LSA-C.C. Art. 2369. As explained by Spaht,
Article 2369 was intended to impose only a particular duty of a fiduciary upon both spouses at termination of the community. The duty was "to account for" community property under a spouse's control at termination. The meaning of "account for," in light of the jurisprudence it codified, is simply to explain what happened to the property. The sole purpose of article 2369 is to assure that former community assets do not disappear. It was not intended to impose a more general, ill-defined "fiduciary" duty upon each spouse. Thus, issues concerning actions by a spouse in relation to former community assets, if those assets have not disappeared, should be governed by the law of co-ownership, negotiorum gestio, or partition of community property.
Spaht, Matrimonial Regimes, 48 La.L.Rev. 371, 385 (1987).
A spouse having control of community property at the termination of a community property regime occupies the position of a co-owner under the general law of property. Thus he ought to be accountable for the fruits produced by the things since the termination of the community property regime. LSA-C.C. Art. 2369, Comment (c).
The community expenditures noted by the trial court, occurred prior to termination of the community. The accounting mandated by Art. 2369 refers to assets under Mr. Kyson's control at termination of the community. The fruits received thereafter were fruits of the former community, rather than fruits of the community regime and, as co-owner, Mrs. Kyson is entitled to half. Finding Mr. Kyson accountable for the fruits of the former community lease, we hold that Mrs. Kyson is entitled to $4,350, an amount equivalent to half of the net income which Mr. Kyson received from the leases after termination of the community.

Loss of future rental payments.
Mrs. Kyson points out that the notice of lease termination occurred one day after the divorce was granted on March 4, 1987, and asserts that Mr. Kyson terminated the lease "out of spite" in order to avoid having to share the rental income with her. She contends that this termination of the lease violated his fiduciary duty to prudently manage the former community lease.
Mrs. Kyson further contends that Mr. Kyson's exercise of control over the lease *1320 was without her concurrence and contends that Mr. Kyson's unexplained termination of a profitable community sublease constituted a breach of his fiduciary duty to Mrs. Kyson established under LSA-C.C. Art. 2369, thus he is liable for her loss which resulted from his breach of his fiduciary duty. Queenan v. Queenan, 492 So.2d 902 (La.App. 3d Cir.1986), writ denied, 496 So.2d 1045 (La.1986); and Lococo v. Lococo, 462 So.2d 893 (La.App. 4th Cir.1984). She requests judgment awarding her $47,175 as the amount equivalent to half of the $850 per month, in net future rentals which she allegedly would have received during the remainder of the ten-year lease term.
We have examined the cases cited by Mrs. Kyson in support of her contentions, but have found no consistent rule of law. In Queenan, supra, Mrs. Queenan alleged that Mr. Queenan took advantage of his control and possession of a former community corporation and depleted its assets for his own benefit by paying to himself excessive salaries and expenses, borrowing monies which he did not repay, etc. That court determined that:
[F]ollowing the judicial termination of a community regime and before a property settlement of the community assets has been consummated, a former spouse having control and possession of any assets belonging to the community regime would owe a fiduciary obligation to the former spouse who is not in control or possession.
Until there is a community property settlement, there exists a practical or empirical extention [sic] of the community regime insofar as the duties and obligations of the former spouses relate to each other in the management of the community assets.
Queenan, supra, 492 So.2d at 912. The court found a "technical or legal extention [sic] ... thus acquiring a peculiar relationship as a specie of partners, co-owners, and as in the case sub judice co-owners of shares of stock and/or common owners of shares of stock...." Id. As support for this conclusion, the court cited: LSA-C.C. Art. 2354 (liability for fraud or bad faith in the management of community property); LSA-C.C. Art. 2369; LSA-C.C. Art. 2809 (fiduciary duty owed by a partner to the partnership and partner(s)); LSA-R.S. 12:91 (fiduciary relationship of officers and directors to a corporation and its shareholders); Hodson v. Hodson, 292 So.2d 831 (La.App. 2d Cir.1974) (The obligation of the husband to account to the wife is based primarily upon the fiduciary relationship existing between them under the LSA-C.C. Art. 2404, which has been repealed); and Noe v. Roussel, 310 So.2d 806 (La.1975) (fiduciary duty of a corporate liquidator; "... an agent or fiduciary must handle the matter as though it were his own affair").
By contrast, the instant case involves no such corporate fiduciary duty or status as shareholders in a family corporation. Mr. Kyson did not benefit from the termination of the lease agreement. Once Mr. Kyson terminated the Dinwiddie lease agreement, both he and Mrs. Kyson lost the benefits of the sublease. We find Queenan factually distinguishable. We decline to adopt its theory of extension of the community during the time period between its termination and partition.
In Lococo, supra, Mrs. Lococo sought recovery for Mr. Lococo's alleged failure to maintain certain community properties in a state of repair. The court stated "[w]e do not believe that C.C. Art. 2369 has any application in this case, nor ... have we been able to determine exactly in what situation C.C. Art. 2369 applies." Lococo, supra, 462 So.2d at 895. The court then reasoned that,
If C.C. Art. 2369 is to have any application to this case, it must be presumed that its authors intended for a spouse having control of community property at the termination of a community property regime to occupy the position of a coowner under the general law of property.
Id. The court indicated that, as co-owner, "... defendant would owe a fiduciary obligation to the plaintiff based upon the principle *1321 of negotiorum gestio. LSA-C.C. 2295." Id. Citing Beavers v. Stephens, 341 So.2d 1278 (La.App. 3d Cir.1977) and Smith v. Succession of Smith, 298 So.2d 146 (La.App. 1st Cir.1974), the Lococo court used the following language upon which Mrs. Kyson relies:
Any serious deterioration of the properties under his management, absent a sufficient explanation of the causation thereof, indicates a breach of that fiduciary duty. Thus, the defendant would have to account to and compensate the plaintiff for losses or damages incurred due to his mismanagement or negligence.
Lococo, supra. The court then addressed the issue of prescription by defining Mrs. Lococo's action as a suit for breach of fiduciary duty and applied the ten year liberative prescription.
Beavers, supra, involved a lawsuit between M.C. Stephens, the surviving spouse of Lodima Trotti Stephens, and Jeannine Jones Beavers, Lodima's daughter by a prior marriage. After Lodima's death, Stephens and Beavers co-owned Steve's Package Liquor Store, which was operated by Stephens. In an effort to settle Lodima's estate, Beavers and Stephens entered into an agreement which provided that Stephens would owe Beavers one-half of store profits for a specified period of time, and would render an accounting on a specified date. Beavers filed suit against Stephens for lost profits, alleging, that Stephens' accounting of the profits from the liquor store was incorrect. Observing a decline in net profits between 1970 and early 1973, from $24,711 to-$1,178, the court determined that, under the principle of negotiorum gestio, Stephens owed a fiduciary duty to properly and efficiently manage the liquor store.
The Lococo language relied upon by Mrs. Kyson substantially tracks that found in Beavers, supra, 341 So.2d at 1281:
[W]e find that defendant was possessed of a fiduciary duty to properly and efficiently manage the affairs of Steve's Package Liquor Store. The serious decline in profits of the business under his management, absent a sufficient explanation of the causation thereof, indicates a breach of that fiduciary duty..... Thus defendant must account to and compensate plaintiff for losses which the business incurred due to his mismanagement or negligence.
As support for its imposition of the fiduciary duty, the Beavers court cited LSA-C.C. Art. 2298, which states that the duty owed by the negotiorum gestor is that of a prudent administrator.
Smith, supra, was also cited in support of the Lococo language. Cyril Smith, purchased 250 shares of stock six days prior to filing a divorce suit against his wife, Winnie Smith. The judgment of divorce was signed in October and, after partition negotiations began, Mr. Smith sold the stock in December. Mr. Smith died approximately one year after the December sale. Mrs. Smith stipulated that, in December, the stock had a value of $10,165.
During the time period between the December sale of stock and the filing of the partition suit, there were two stock dividends which would have increased the 250 shares to 750 shares with a value of more than $25,000. On appeal, she alleged that Mr. Smith had no right to dispose of the stock without her permission, and that his succession should be required to account for the 750 shares of stock, either in kind or at the fair market value as of the date her partition suit was filed. The court stated:
Mr. Smith owed a fiduciary obligation to the former wife after the dissolution of the community. In his fiduciary capacity he owed the obligation of caring for the community property as a prudent administrator. We find no breach of this duty by Mr. Smith.
Smith, supra, 298 So.2d at 148 (citation omitted).
Neither Queenan, Lococo, nor the cases cited in support of the Lococo language *1322 directly addresses the question presented herein: whether a non-managing spouse may recover an alleged loss of future fruits of the former community property (1) when the managing spouse unilaterally alienates the underlying former community property prior to partition of the community and (2) when the managing spouse did not benefit from the alienation.
In Queenan, the court permitted recovery by the non-managing spouse/shareholder in a family corporation from which the managing spouse took large amounts of money for his personal use. In deciding an issue of prescription, the Lococo court discussed a fiduciary duty of a gestor for the physical deterioration of properties and failure to pay property taxes. The Beavers court granted recovery for past profits lost due to mismanagement or negligence of the managing co-owner. In Smith the non-managing spouse asserted that her concurrence was required for the alienation of former community stock; the court found no violation of the fiduciary duty of prudent administration and denied recovery for her alleged loss of appreciation due to the unilateral alienation.
In the cases discussed herein, the courts have allowed recovery for mismanagement or negligence where the asset depleted thereby was quantifiable to a reasonable degree of certainty. The Beavers court based its award upon its assessment of the past profit margins of the liquor store. The Queenan court determined its award by comparing the book values of the former community corporation and a separate corporation which flourished at the expense of the community corporation.
The former spouses continue to be co-owners of the community property even after the termination of the community and until it has been finally partitioned. Hare v. Hodgins, 586 So.2d 118, 123 (La.1991); See also, 16 K. Spaht & W.L. Hargrove, Louisiana Civil Law Treatise, "Matrimonial Regime" § 7.19 at 316-324 (1989). A co-owner is accountable for any loss of the things under his control attributed to his fault. LSA-C.C. Art. 2369, Comment (c).
When a man voluntarily undertakes to manage the affairs of another, he contracts the tacit engagement to continue it and to complete it. LSA-C.C. Art. 2295. In managing the business, he is obliged to use all the care of a prudent administrator. LSA-C.C. Art. 2298.
From the jurisprudence and official comment to Art. 2369, we find that the Kysons were co-owners of the former community lease.[2] Mr. Kyson concedes that he acted alone in terminating the Dinwiddie lease. As a co-owner, Mr. Kyson must be held accountable for any loss of the things under his control attributed to his fault.
Mr. Kyson undertook sole management of the Dinwiddie lease and, after termination of the community, he elected to terminate the lease without Mrs. Kyson's knowledge or concurrence. Because of his action, that former community asset no longer exists. Mr. Kyson gave no explanation at trial of his reasons for terminating the lease.
At termination of the community, the Kysons became co-owners of the lease. As managing co-owner, Mr. Kyson was obligated to act as a prudent administrator. LSA-C.C. Art. 2298. His unexplained termination of the lease, without Mrs. Kyson's concurrence, breached his duty of prudent administration and caused the former community to lose this asset. Because his breach caused this loss to the former community, Mr. Kyson must be held accountable for the loss.
During trial in January 1989, Mrs. Dinwiddie testified that the Hortons still occupied the premises and had continued to pay the $1,350 rent directly to her. Mrs. Dinwiddie gave no indication that she desired the lease termination or that she was dissatisfied *1323 with the terms of the 10-year lease agreement. Consequently, it is reasonable to conclude that, at least through January 1989, if Mr. Kyson had not terminated the lease, the Hortons would have continued their monthly rental payments of $1,350 to Mr. Kyson and Mr. Kyson would have continued his monthly rental payments of $500 to Mrs. Dinwiddie.
The net monthly rental income at the time the lease was terminated was $850. If the lease had remained in effect during the sixteen month period between the lease termination and the partition trial (October 1987 through January 1989), the net amount of rentals he would have received is $13,600. Accordingly, we find that Mrs. Kyson is entitled to an award of $6,800, an amount equivalent to half of the net rentals Mr. Kyson would have received had the former community lease continued under the same terms through the partition trial in January 1989.
As to Mrs. Kyson's request for future rentals beyond the date of trial, the at will nature of this sublease renders the amount of the alleged loss of future rentals uncertain. Although Mrs. Kyson claims entitlement to half of the future rentals for the remainder of the 10 year lease agreement, the future payments on the sublease were not for a fixed term. This sublease was oral and was for no specified length of time. At any time the Hortons could terminate the lease upon ten days written notice. LSA-C.C. Art. 2686. During the existence of the sublease, either the Kysons or the Hortons could have terminated the sublease at will. Likewise, after September 1987, either Mrs. Dinwiddie or the Hortons could modify or cancel the terms of their oral month-to-month lease.
The Hortons did not testify as to their future intent regarding the lease. No expert testimony was adduced from which we might otherwise ascertain the future market value of the lease. Other than the amount of rentals paid by the Hortons and the amount expended on repairs to the property, the record contains no evidence from which the value of the ten-year lease may be ascertained. Therefore, the expected or projected amount of rentals, from the date of trial through the end of the ten year lease, which the Kysons could have received from either the Hortons or from the market for property similar to the Dinwiddie property, is of uncertain value.

CONCLUSION
For the foregoing reasons, we find the following: Mrs. Kyson is not entitled to the rentals from Mr. Kyson's separate and paraphernal property because they were not transformed into community property. The trial court's factual determinations regarding the E.F. Hutton account and Bossier Bank account were supported by the record. Mrs. Kyson is not entitled to funds from either the investment or bank account.
As to the net rentals received by Mr. Kyson from the Dinwiddie lease, Mrs. Kyson may not recover those received prior to termination of the community. However, she is entitled to $4,350, an amount equivalent to half of the net rentals received by Mr. Kyson after termination of the community. With regard to her claim for lost future rentals, Mrs. Kyson is entitled to $6,800, an amount equivalent to half of the net rentals which Mr. Kyson would have received if the lease had continued under the same terms from the time of its termination until the date of the partition trial.
Accordingly, the judgment of the trial court is amended as follows:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of plaintiff, PATRICIA ANN FAUST KYSON, and against defendant, GENE DOUGLAS KYSON, awarding unto PATRICIA ANN FAUST KYSON the sum of Eleven Thousand One Hundred Fifty and 00/100 ($11,150.00) Dollars, together with legal interest thereon from date of judicial demand.
Costs of this appeal are to be paid by the parties equally.
*1324 AMENDED AND, AS AMENDED, AFFIRMED.
NORRIS, J., concurs in the result.
NOTES
[1] These figures include income received prior to the filing of the affidavit on February 2, 1982. Any income received prior to this date and after the date of marriage is classified as community property. LSA-C.C. Art. 2339. This appeal is limited to the classification of the income after the February 2 date.
[2] The pertinent parts of former LSA-C.C. Art. 2386 read as follows:

The fruits of the paraphernal property of the wife, wherever the property be located and however administered, whether natural, civil, including interest, dividends and rents, or from the result of labor, fall into the conjugal partnership, if there exists a community of acquets and gains; unless the wife, by written instrument, shall declare that she reserves all of such fruits for her own separate use and benefit and her intention to administer such property separately and alone....
By its wording fruits resulting from labor were considered community property unless the wife declared her intent to have them separate. Despite this seemingly restrictive language, the courts refused to hold that certain fruits which were the result of labor and which were reserved as separate property were in fact separate. (Paxton, supra.) It seems to follow then that this rationale continues to apply under the less restrictive provisions of the present LSA-C.C. Art. 2339.
[1] Although not at issue on appeal, Mr. Kyson's petition for partition, as amended, requests reimbursement for separate funds expended for the benefit of the community.
[2] The Kysons were divorced prior to the enactment of LSA-C.C. Art. 2369.1 which provides that, upon termination of the community, the spouses become co-owners of the community and are subject to LSA-C.C. Arts. 797 et. seq.