1 .GUIDRY, J.
A former spouse appeals a partial judgment declaring that renewal commissions received by her ex-husband on insurance policies issued prior to their marriage are civil fruits subject to the ex-husband’s declaration of paraphernality. Finding that the renewal commissions were the civil fruits of certain juridical acts, specifically policies of insurance solicited by the ex-husband and issued prior to the establishment of the community property regime, we affirm.
FACTS AND PROCEDURAL HISTORY
The parties to this appeal, Billy Wayne Ross and Susan Diane Starks[1] were married on May 29, 1992. Shortly after their marriage, Mr. Ross filed a declaration of paraphernality on July 10, 1992, wherein he declared:
that in accordance with the provision of Article 2339 of the Civil Code of Louisiana, as amended by Act 709 of 1979, he reserves all fruits of his paraphernal and separate property, wherever located and however administered, whether such fruits be natural or civil, including interest, dividends and rents, bonuses, royalties, delay rentals and shut-in payments arising from mineral leases on separate property, or from the result of labor, or otherwise, for his own separate use and benefit and that it is his intention to administer such property separately and alone.
Also in the declaration, Mr. Ross acknowledged that a regime of acquets and gains otherwise existed between him and Ms. Starks.
Four years later, Ms. Starks filed for divorce and, after the expiration of 180 days, a judgment of divorce was granted the parties on June 11, 1997. She then filed a petition to partition community property on November 6, 1997. In that petition, among other claims, Ms. Starks asserted that Mr. Ross had used community funds to satisfy his separate debts. In his answer to the petition to partition community property, Mr. Ross denied Ms. Starks’ assertion, claiming that |sthe income in question, which he received from his insurance business, was his separate property subject to the declaration of par-aphernality.
Following a period of discovery and the filing of supplemental pleadings, the trial court held a hearing on the singular issue of whether the income derived from Mr. Ross’ insurance business was his separate property and thus subject to the declaration of paraphernality. In a partial judgment signed May 1, 2001[2], the trial court *819 made the following decrees: (1) that the renewal commissions for policies issued before May 29, 1992, are classified as Mr. Ross’ separate property; (2) that Ms. Starks bore the burden of proving any entitlement to a pro rata share of renewals received by Mr. Ross after the establishment of the community regime, but prior to the filing of the declaration of parapher-nality; and (3) that any new policies issued during the existence of the community, and renewal commissions derived therefrom, subject to deductions based on any efforts, skills or industry exerted by Mr. Ross following the termination of the community regime, were community property.
ASSIGNMENTS OF ERROR
Ms. Starks appeals, contending that the trial court committed error based on the following determinations:
1. The renewal commissions earned by the Appellee were civil fruits and constituted separate property, which could be reserved to sole administration and control of the Appellee.
2. The Appellant bears the burden of proof in showing that the renewal commissions earned as a result of the labor, skill, and industry of the Appellee are separate in nature, despite the fact that such earnings are presumptively community assets as a matter of law.
3. The renewal commissions earned by the Appellee during his marriage to the Appellant were not the result of his effort, skill, effort and industry; and
|44. Policies sold by the Appellee prior to his marriage to the Appellant constituted a “thing” from which fruits could be derived.
DISCUSSION
In addressing the issues raised by Ms. Starks in this appeal, we begin by outlining the basic principles of law governing this matter. Louisiana law provides that things in the possession of a spouse during the existence of a regime of acquets and gains are presumed to be community. La. C.C. art. 2340. However, either spouse may rebut this presumption. La. C.C. art. 2340. The spouse seeking to rebut the presumption bears the burden of proving that the property is separate in nature. Knighten v. Knighten, 00-1662, p. 7 (La.App. 1st Cir. 9/28/01), 809 So.2d 324, 331, writ denied, 01-2846 (La.1/4/02), 805 So.2d 207.
Property acquired by a spouse prior to the establishment of a community property regime is separate property. La. C.C. art. 2341. Yet, the natural and civil fruits of separate property produced during the existence of the community property regime are community unless a spouse reserves them as his separate property in a declaration made by authentic act or an act under private signature duly acknowledged. La. C.C. art. 2339.
We will begin our analysis by first discussing Ms. Starks’ first and fourth assignments of error. Ms. Starks asserts in these assignments of error that the trial court erred in holding that the insurance policies issued prior to the establishment of the community property regime were “things” and that the renewal commissions derived therefrom during the existence of the community property regime were fruits.
The trial court relied on several cases where the courts of this state found that renewal commissions derived from policies generated from the effort, skill, and industry of a spouse during the existence of the *820 community property regime were community property. The trial court then reasoned that policies generated |Bprior to the establishment of the community property regime were Mr. Ross’ separate property. Based on Mr. Ross’ declaration of para-phernality, the trial court further held that the renewal commissions on those policies generated prior to the establishment of the community property regime were'also Mr. Ross’ separate property. See Futch v. Futch, 26,149 (La.App. 4th Cir. 9/23/94), 643 So.2d 364; Michel v. Michel, 484 So.2d 829 (La.App. 1st Cir.1986); Boyle v. Boyle, 459 So.2d 735 (La.App. 4th Cir.1984), writ denied, 462 So.2d 651 (La.1985).
To refute this finding by the trial court, Ms. Starks emphasizes that the declaration filed by Mr. Ross, pursuant to La. C.C. art. 2339, only applied to the “natural and civil fruits of the separate property.” In her specific assignment of error in regard to this issue, Ms. Starks asserts that the pre-community policies were not things from which fruits could derive. However, in her arguments in support of this assignment of error, Ms. Starks asserts that Mr. Ross’ insurance business could not be considered a thing or asset from which civil fruits could be derived. We note that the trial court found that the thing or asset from which civil fruits derived were the actual policies of insurance, and not Mr. Ross’ agency. Furthermore, La. C.C. art. 551 provides that “[e]ivil fruits are revenues derived from a thing by operation of law or by reason of a juridical act, such as rentals, interest, and certain corporate distributions.” (Emphasis added.) Since the record shows that Mr. Ross received renewal commissions based on his contract with State Farm and renewals of pre-exist-ing insurance policies, and since both the contract and the insurance policies are juridical acts, we find no error in the trial court’s determination that the policies are things or assets from which civil fruits may be derived. See also Futch, 26,149 at 3, 643 So.2d at 367.
Nevertheless, Ms. Starks contends that the renewal commissions at issue should not be considered civil fruits, but rather they should be deemed Mr. Ross’ |fisalary because the majority, if not all of his income is attributed to the renewal commissions. We disagree.
In Kyson v. Kyson, 596 So.2d 1308 (La.App. 2nd Cir.1991) (on rehearing), writ denied,, 599 So.2d 314 (La.1992), the second circuit held that although Mr. Kyson referred to his occupation as that of a rental manger, that he had listed his occupation as rental manager on his tax returns, and that the income from the rental property represented a disproportionate amount of his total income, it was of no moment without proof that the rental income was attributable to substantial labor exerted by Mr. Kyson during the community. Kyson, 596 So.2d at 1315. In affirming the trial court’s determination that the rental income was Mr. Kyson’s separate income, the court stated that his “personal management efforts toward these four properties during the marriage cannot be viewed on this record as so extraordinary as to result in his abdication of the rentals he expressly reserved unto himself.” Kyson, 596 So.2d at 1316.
In Gautreau v. Gautreau, 96-1548 (La.App. 3rd Cir. 6/18/97), 697 So.2d 1339, writ denied, 97-1939 (La.11/7/97), 703 So.2d 1272, the court found that to the extent the income derived by Ms. Gautreau from her separate property (stock in a corporation) was paid to her directly because of her “effort, skill or industry” and not simply passive income accruing as the result of corporate distributions or the increase in value of the corporation due to her labor, the income was community property. *821 Gautreau, 96-1548 at 12-13, 697 So.2d at 1349.
Finally, in Paxton v. Bramlette, 228 So.2d 161 (La.App. 3rd Cir.1969), writs denied, 255 La. 241, 230 So.2d 92 (La.1970), that court also held that the salary paid to Mrs. Bramlette was community property because it resulted from “substantial services” performed by her for a corporation in which she held an 82 percent interest. Paxton, 228 So.2d at 164. (Paxton was decided under La. C.C. art. 2386, a law prior to La. C.C. art. 2339 that governed the declaration of separate 17property during the existence of a community property regime.[3]) Thus, as these cases illustrate, in order to disprove that the renewal commissions received by Mr. Ross were not civil fruits, it was necessary to prove that substantial labor was exerted by Mr. Ross to obtain the renewal commissions during the existence of the community property regime.
In her third assignment of error, Ms. Starks contends that the trial court erred in finding that Mr. Ross expended no effort, skill or industry, during the existence of the community property regime, to keep the pre-community policies generated in effect. Had the trial court found that Mr. Ross had expended any significant effort, skill or industry in effecting the renewal of policies pre-existing the community during the existence of the community property regime, then the commissions would constitute community property and be subject to a claim for partition, to the extent or percentage community labor or “effort, skill, and industry” was attributable to the renewal so effected. See La. C.C. art. 2340; cf Futch, 26,149 at 6, 643 So.2d at 369 (wherein the court held that Mr. Futch was entitled to deduct from the gross renewal commissions, found to be community property in that ease, an amount representative of his individual efforts and investments post-termination in producing these commissions).
A trial court’s findings regarding the nature of the property as community or separate is a factual determination subject to manifest error review. Biondo v. Biondo, 99-0890, pp. 4-5 (La.App. 1st Cir. 7/31/00), 769 So.2d 94, 99. Based on |sour review of the record, we find that the evidence supports the trial court’s determination. Although Mr. Ross may have listed the renewal commissions as income on his income tax statements and such income comprised a disproportionate share of his total income, the evidence shows that Mr. Ross received this income as a result of little or no effort, skill, or industry exerted on his part during the community. See Kyson, 596 So.2d at 1315. Specifically, Mr. Ross testified that most of the renewal commissions received by him stemmed from policies he had actively solicited *822 years previously. At the time of trial, Mr. Ross testified that he had been selling insurance for State Farm since January 1, 1963, and had been compensated on a strictly commission basis by State Farm since 1965.
Mr. Ross further testified, at trial and in deposition, that during the existence of the community property regime, he would go to the office between three to five days out of the week and stay for a periods of three to ten hours. While at the office, Mr. Ross testified that a majority of his time was spent in office management activities such as purchasing advertising, ordering office supplies, and taking care of maintenance concerns. He also stated that the only active effort he made regarding renewal policies was to answer questions from clients concerning their policies and occasionally sending out notices to some, not all, clients whose policies were at risk of lapsing. Mr. Ross testified that he neither advertised nor actively pursued contacting clients in an effort to secure renewals on existing policies.
Thus, considering the cases presented, we find no merit in Ms. Starks’ assertion that the simple designation of the renewal commissions as salary or income bars a finding that the renewal commissions are civil fruits subject to the declaration of paraphernality. Rather, there must be further proof that the civil fruits, in this case, the renewal commissions, resulted from the substantial labor or | fleffort, skill and industry of Mr. Ross, expended during the existence of the community property regime, in order to be classified as community property. See La. C.C. art. 2338; Kyson, 596 So.2d at 1315. Based on the evidence in the record before us, we cannot say that the trial court was clearly wrong in determining that Mr. Ross had not exerted substantial effort, skill or industry during the existence of the community property regime to affect the renewal of existing policies.
Having found no error in the trial court’s conclusion that the renewal commissions received after the effective date of the declaration of paraphernality are Mr. Ross’ separate property, we pretermit discussion of Ms. Starks’ remaining assignment of error.
CONCLUSION
Thus, considering the foregoing, we affirm the trial court’s judgment declaring that the renewal commissions received after the effective date of the declaration of paraphernality are Mr. Ross’ separate property. Costs of this appeal are assessed to Ms. Starks.
AFFIRMED.
FITZSIMMONS, J., agrees and assigns additional reasons.

. By order of the divorce decree, Ms. Starks had to resume the use of her maiden name. Accordingly, we will refer to her as Ms. Starks in the body of this opinion.

. In response to a request by Ms. Starks, and following a status conference and briefing by the parties, the trial court issued an amended judgment on June 15, 2001, wherein it certified that the partial judgment signed on May *819 1, 2001, was a final judgment for purposes of appeal. See La. C.C.P. art. 1915(B).

. The text of former La. C.C. art. 2386 read as follows:
The fruits of the paraphernal property of the wife, wherever the property be located and however administered, whether natural, civil, including interest, dividends and rents, or from the result of labor, fall into the conjugal partnership, if there exists a community of acquets and gains; unless the wife, by written instrument, shall declare that she reserves all of such fruits for her own separate use and benefit and her intention to administer such property separately and alone. The said instrument shall be executed before a Notary Public and two witnesses and duly recorded in the Conveyance Records of the Parish where the community is domiciled.
If there is no community of gains, each party enjoys, as he chooses, that which comes to his hand; but the fruits and revenues which are existing at the dissolution of the marriage, belong to the owner of the things which produce them.