228 So.2d 161 (1969)
Audrey PAXTON, Plaintiff and Appellee,
v.
Hugh T. BRAMLETTE, Defendant and Appellant.
No. 2817.
Court of Appeal of Louisiana, Third Circuit.
October 30, 1969.
Rehearing Denied December 4, 1969.
Writs Refused January 20, 1970.
*162 C. Kenneth Deshotel, Opelousas, for defendant-appellant.
Sandoz, Sandoz & Schiff, by Lawrence B. Sandoz, Jr., Opelousas, for plaintiff-appellee.
Before TATE, HOOD and CULPEPPER, JJ.
CULPEPPER, Judge.
This is a companion case to Bramlette v. Paxton, 228 So.2d 167, in which a separate judgment is rendered.
On June 15, 1967, Mrs. Audrey Paxton, widow of J. W. Low, and the wife of Hugh T. Bramlette, instituted the present action seeking restitution under LSA-CC Article 2376 of certain paraphernal funds, which she allegedly delivered to her husband during the marriage. On November 3, 1967, Hugh T. Bramlette filed the companion suit for separation from bed and board on the ground of abandonment. There was no contest of the separation. A judgment of separation from bed and board was rendered on December 1, 1967.
In his suit, Mr. Bramlette also prayed for restitution of his separate funds and partition and settlement of the community property. The two cases were consolidated for trial of the issues pertaining to restitution and community property settlement.
The district court granted Mrs. Bramlette judgment for restitution of her paraphernal funds in the sum of $96,356.40, the entire amount prayed for. Since this amount exceeded the value of the community property, Mr. Bramlette's demand for settlement of the community was denied. Mr. Bramlette appealed from both judgments.
The general facts show that the plaintiff, Audrey Paxton, was first married to J. W. Low, who died in 1953. Of this marriage one child was born, Mrs. Billie Low McRight.
Considerable property was accumulated during the marriage of Audrey Paxton and J. W. Low. A financial statement dated January 1, 1957 (approximately 8 months before the marriage of Audrey Paxton and Hugh T. Bramlette) shows gross assets of $616,913, liabilities of $111,265, or a net value of $505,647. Of this amount, Audrey Paxton owned a 5/6 interest and Mrs. McRight a 1/6 interest. These assets consist principally of stock in J. W. Low, Inc., a variety store chain founded by plaintiff's first husband, and certain commercial rental properties located in the city of Opelousas.
Audrey Paxton married Hugh T. Bramlette on August 2, 1957. In 1958, Mr. Bramlette commenced the operation of a farm under the name "Bramlette Farm." During the marriage, which terminated by judgment of separation on December 1, 1967, Mrs. Bramlette delivered to her husband various sums of money which were used principally to purchase and operate the Bramlette Farm.
These advances were made by 51 checks, listed in plaintiff's petition and filed in evidence as Exhibit P-24 (Tr. 140). They total $96,356.40. Each of these checks is drawn on one of Mrs. Bramlette's two personal checking accounts, one in Planters Trust & Savings Bank of Opelousas and the other in St. Landry Bank & Trust Company, in Opelousas. She contends these funds were her separate property delivered to her husband for use by the community and that she is entitled to their full restitution, LSA-CC Article 2376, Slater v. Culpepper, 233 La. 1071, 99 So.2d 348 (1957).
Essentially, Mr. Bramlette's defense is that the two bank accounts, on which the 51 checks were drawn, although initially the separate property of Mrs. Bramlette, became commingled with substantial sums *163 of community money, thereby changing these accounts to community property. He contends that during the entire ten years of the marriage Mrs. Bramlette received salaries of $12,000 a year from J. W. Low, Inc. and $1800 annually from A. & J. Realty, Inc. Also, she received certain rents and interest which fell into the community. He says these earnings were community property and were deposited in Mrs. Bramlette's two personal bank accounts.
On the other hand, Mrs. Bramlette contends that the funds which she delivered to Mr. Bramlette during the marriage are traceable from six different sources of separate and paraphernal funds into the two bank accounts from which they were drawn.
SALARIES, RENT AND INTEREST RECEIVED BY MRS. BRAMLETTE, SEPARATE OR COMMUNITY
The initial issue is whether the salaries received by Mrs. Bramlette during the marriage were separate or community property. We will first state the applicable law. The wife's earnings from her own labor and industry, while living in community with her husband are community property, LSA-CCP Article 2334, Houghton v. Hall, 177 La. 237, 148 So. 37 (1933); Fazzio v. Krieger, 226 La. 511, 76 So.2d 713 (1964). LSA-CC Article 2386, as amended in 1944, reads as follows:
"The fruits of the paraphernal property of the wife, wherever the property be located and however administered, whether natural, civil, including interest, dividends and rents, or from the result of labor, fall into the conjugal partnership, if there exists a community of acquets and gains; unless the wife, by written instrument, shall declare that she reserves all of such fruits for her own separate use and benefit and her intention to administer such property separately and alone. The said instrument shall be executed before a Notary Public and two witnesss and duly recorded in the Conveyance Records of the Parish where the community is domiciled.
"If there is no community of gains, each party enjoys, as he chooses, that which comes to his hand; but the fruits and revenues which are existing at the dissolution of the marriage, belong to the owner of the things which produce them."
Succession of Lejeune, 221 La. 437, 59 So.2d 446 (1952) and Abraham v. Abraham, 230 La. 78, 87 So.2d 735 (1956) make it clear that the 1944 amendment to LSA-CC Article 2386 does not change the law as to earnings produced by the industry and labor of the wife. These are community assets regardless of whether she files the written instrument provided for under Article 2386.
The Law Review Articles found in 25 La.Rev. 95 at pg. 104 and 34 Tul.Law Rev. 3 discuss the problem of what income represents "fruits", which become the wife's separate property, and what income represents "earnings" which fall into the community, under LSA-CC Article 2386, after the affidavit is filed. The authors suggest the courts should use the ratio of labor to capital as a criterion for classifying the income as fruits or earnings. "Thus if the revenue received was the result of substantial capital investment with relatively little labor, it would be a fruit governed by Article 2386; but if the revenue represents the return on substantial labor with relatively little capital investment, it would be earnings governed by Article 2334." 25 La.Law Rev. at pg. 104.
On June 28, 1963, Mrs. Bramlette filed a written instrument, pursuant to Article 2386 quoted above, declaring her intention to administer her paraphernal property for her separate benefit. There is no question that the salaries received by Mrs. Bramlette from the date of the marriage, August 2, 1957, until the date she filed the affidavit for separate administration, June *164 28, 1963, are community property. At $1,000 per month, she received salaries totaling $70,000 from J. W. Low, Inc. during this period. Clearly, this $70,000 was community property.
At the time of the marriage, Mrs. Bramlette's real estate interests were not incorporated. She simply received the rents which were fruits of her paraphernal property. These totaled at least $1,800 per year. On June 1, 1959, A. & J. Realty, Inc. was organized and the realty transferred to it. Thereafter Mrs. Bramlette received the annual salary of $1,800 from the corporation. This means that from the realty business she received about $10,000 in rent and salary by June 28, 1963. This also is community. Hence a total of $80,000 in community funds was received by Mrs. Bramlette from these sources before she filed the affidavit.
Furthermore, there can be little question that the salary received by Mrs. Bramlette from A. & J. Realty, Inc. after she filed the affidavit in 1963 is community property. The evidence shows that Mrs. Bramlette personally performed most of the managerial duties in the operation of A. & J. Realty, Inc. She maintained a desk in the building which the realty company owned and which housed A. J. Low, Inc. She collected all of the rents, deposited them in the bank, handled all of the maintenance and repairs of the various buildings owned by A. & J. Realty, Inc. and generally had the full responsibility for this corporation's management. Hence, it is clear that the salary of about $8,000 received by Mrs. Bramlette from A. & J. Realty, Inc. from the date she filed the affidavit, June 28, 1963, until the date of the judgment of the separation, December 1, 1967, is also community property. Adding this to the $80,000, which we have already found above is community, makes a total of $88,000 in community funds which were commingled in the two bank accounts in question.
There may be some question as to the salary received by Mrs. Bramlette from A. J. Low, Inc. after she filed the affidavit in 1963. She owned 82% of the stock in this corporation but received no dividends. She received a salary of $12,000 per year but says she performed little labor for the corporation. According to Mrs. Bramlette's testimony, she had a desk in the building which housed the corporate offices but had no specific duties. The company was managed by Mr. Leon Huckaby, who owns 8% of the stock. She says she usually went to the office after lunch, at about 1:00 p. m., and remained until about 4:00 p. m., after which she customarily visited friends until she returned to the family home at the farm. Furthermore, she testified that two or three times a year she visited the other stores in the chain (as we understand the record there were three stores other than that in Opelousas) but that each store had a manager.
Mr. Bramlette's testimony is different. He says Mrs. Bramlette usually went to her office about 10:00 a. m. and remained until 5:00 p. m. and occasionally until 7:00 p. m. It was Mr. Bramlette's understanding that no important business decisions were made without Mrs. Low's approval. This seems logical, since she owned 82% of the stock.
Ultimately, it is our conclusion that Mrs. Bramlette performed substantial services to the corporation and that the $12,000 paid to her annually constituted earnings derived from her labor and industry. It is noteworthy that she reported these sums on her Federal Income Tax Returns as salary. We think it was salary in the true sense of the word and not merely an amount paid in lieu of dividends on her corporate stock.
The salary earned by Mrs. Bramlette from A. J. Low, Inc. for the period from June 28, 1963 to the date of the judgment of separation, December 1, 1967, was approximately $54,000. This amount added to the $88,000 previously found to be community property makes a total of $142,000 of community money which was commingled indiscriminately in the two bank *165 accounts in question during the ten years of the marriage.
In addition, the record shows Mrs. Bramlette received substantial sums of interest on mortgages she and her daughter held on the property of A. & J. Realty, Inc. Also, interest on loans she made from her personal funds to the various stores. All of this interest which she received before she filed the affidavit in 1963 is community property, LSA-CC Article 2386.
COMMINGLING
Our jurisprudence is established that when large sums of community funds are commingled indiscriminately with separate funds, to the extent that the separate funds are no longer capable of identification, all of the commingled funds become community property. Succession of Land, 212 La. 103, 31 So.2d 609; Magnolia Petroleum Co. v. Crigler, 12 So.2d 511 (La.App.); Bruyninckx v. Woodward, 217 La. 736, 47 So.2d 478; Slater v. Culpepper, 233 La. 1071, 99 So.2d 348.
However, where the amount of community money is small in comparison with the separate funds with which it is commingled, the entire funds do not become community property. Odom v. Odom, 121 So.2d 8 (La. App.); Giamanco v. Giamanco, 131 So.2d 159 (La.App. 3rd Cir. 1961); Slater v. Culpepper, supra; Succession of Sonnier, 208 So.2d 562 (La.App.).
There is also jurisprudence holding that the mere mixing of separate and community funds in the same account does not of itself convert the entire account into community property, where the separate funds can be traced with sufficient certainty to establish their identity. Betz v. Riviere, 211 La. 43, 29 So.2d 465; Graves v. United States Rubber Company, 237 La. 505, 111 So.2d 752.
In the present case, Mrs. Bramlette had $14,481.64 of paraphernal funds on deposit in the St. Landry Bank & Trust Company, and $13,918.64 in the Planters Trust & Savings Bank, at the time of the marriage. No attempt was made by Mrs. Bramlette to prove the source of all of the funds deposited or the purpose of all the withdrawals from these accounts during the ten years of the marriage. She says this is impossible because of the length of time involved, the number of checks and deposit slips and the fact that some of the records are not available.
In addition to the two bank accounts, Mrs. Bramlette had two "drawing accounts" which she used for frequent deposits and withdrawals. One was a "Loans Payable" account kept by J. W. Low, Inc. and the other was an account with A. & J. Realty, Inc. Mrs. Bramlette used these four accounts indiscriminately for the purpose of conducting both her separate and marital affairs. There was no attempt to keep her paraphernal funds separate. For instance, when one of the stores, or an employee, needed money she would loan it from one of these accounts and collect it plus interest. She freely transferred money from one account to the other as needed for her various business enterprises. One of these was a business known as "La Boutique". This was a ladies clothing variety store, owned by Mrs. Bramlette and her daughter. Apparently it lost money, because no income is claimed to have been derived from it.
Under these circumstances, there was substantial commingling of the two bank accounts to the extent that it is impossible to identify the $96,356 delivered to Mr. Bramlette as separate funds of his wife. Regarding deposits, we have already found that more than $142,000 of community funds were placed in these accounts during the ten years of the marriage. Mrs. Bramlette does not attempt to prove how much of her separate funds were deposited in these two bank accounts except for the approximately $28,000 which was in them at the time of the marriage. As to withdrawals, funds were taken from these two accounts by Mrs. Bramlette for the conduct of both her separate and marital affairs. *166 She testified that during the ten years of her marriage she paid from these two accounts living expenses of $125,533. Of course, the 51 checks totaling $96,356 were also drawn on these two accounts and delivered to Mr. Bramlette for the purchase and operation of Bramlette Farm. What withdrawals were made from these accounts for use by Mrs. Bramlette in her various business enterprises is a matter of pure conjecture. The records were not produced. On the date of the separation judgment, December 1, 1967, there was a combined balance of approximately $10,000 in the two bank accounts.
MRS. BRAMLETTE'S ARGUMENTS
Mrs. Bramlette attempts to prove her case by showing that the $96,356 which she delivered to Mr. Bramlette during the marriage is traceable from six different sources of separate and paraphernal funds: (1) reduction in her bank accounts$25,516; (2) reduction in loans receivable from J. W. Low, Inc.$53,687; (3) payment of loans receivable from A. & J. Realty, Inc.$39,309; (4) principal payments on a second mortgage from A. & J. Realty, Inc.$23,000; (5) interest paid on second mortgage by A. & J. Realty, Inc.$14,475; (6) increase in mortgage on home$7,497. She says the reduction in her paraphernal assets during the marriage totaled $163,486. She gives her husband credit for a loan of $9,000 which she made during the marriage to La Boutique and concludes the net reduction in her assets during the marriage was $154,486.
Essentially, the method of proof attempted by Mrs. Bramlette is to show the value of her separate and paraphernal assets before and after the marriage. This theory ignores the requirement that she prove the specific funds delivered to her husband were her separate property. It may be that Mrs. Bramlette's paraphernal assets suffered a loss of approximately $154,000 during the marriage, but this loss could be due to the use of her funds for purposes other than delivery to her husband. As stated above, the record does not contain evidence of all of the withdrawals from Mrs. Bramlette's personal checking accounts. These withdrawals could have been for many other purposes. For instance, she could have withdrawn money for gifts to her grandchildren. Of course, there is also the possibility that she withdrew money for her personal business purposes.
The only funds which she is able to show were delivered to her husband are the 51 checks, totaling $96,356, drawn on the two personal bank accounts. We have found, as set out above, that these accounts were commingled and hence are community property. She has not proved the delivery of any separate funds to Mr. Bramlette. We conclude the demand of Mrs. Bramlette for restitution must be denied.
MR. BRAMLETTE'S DEMAND FOR RESTITUTION
Mr. Bramlette contends he is entitled to reimbursement of $41,609 for separate funds which he allegedly used for the community. At the time of the marriage he owned certain real estate which he later sold. He contends he is enttiled to restitution for these sums.
Our jurisprudence is established that, unlike the wife, the husband is entitled to restitution only to the extent that his separate funds have been employed to enhance the value of the community property. Munchow v. Munchow, 136 La. 753, 67 So. 819; Slater v. Culpepper, supra. In the present case the evidence does not show an enhancement in the value of the community property. Accordingly, Mr. Bramlette's demand for restitution is denied.
DECREE
For the reasons assigned, the judgment appealed is reversed and set aside. Judgment now is rendered in favor of the defendant, Hugh T. Bramlette, and against the plaintiff, Mrs. Audrey Paxton Bramlette, rejecting her demands for restitution *167 at her cost. All costs of this appeal are assessed against Mrs. Audrey Paxton Bramlette.
Reversed and rendered.
On Application for Rehearing.
En Banc. Rehearing denied.