697 So.2d 1339 (1997)
Brian Keith GAUTREAU, PlaintiffAppellee,
v.
Elizabeth S. GAUTREAU, Defendant-Appellant.
No. 96-1548.
Court of Appeal of Louisiana, Third Circuit.
June 18, 1997.
*1342 Adras Paul Endom, Andre F. Toce, Lafayette, for Brian Keith Gautreau.
Glennon P. Everett, Diane Sorola, Lafayette, for Elizabeth S. Gautreau.
Before DOUCET, C.J., and YELVERTON and WOODARD, JJ.
WOODARD, Judge.
Defendant in a divorce action including community property and child custody issues appeals the determinations of the trial court granting plaintiff sole custody of the minor children and various community property rulings. We affirm in part, reverse in part and remand.

FACTS
Brian K. Gautreau and Elizabeth Gautreau were married on February 13, 1982, and made their matrimonial domicile in Lafayette Parish, Louisiana. Three children were born of the marriage: Shannon Nicole Gautreau on March 26, 1985; Shelly Renee Gautreau on April 19, 1986; and Mary Elizabeth Gautreau on February 23, 1990. The parties physically separated, and Mr. Gautreau filed for divorce on May 27, 1993. This case concerns the community property determinations of the trial court as well as custody of the Gautreau's minor children.
On June 22, 1993, the parties stipulated to an order granting Ms. Gautreau custody of the children and granting Mr. Gautreau liberal visitation rights. The parties also stipulated to the choice of Dr. Warren Lowe as court appointed psychologist. On June 23, 1993, Ms. Gautreau was arrested for DWI. It was her second such arrest. A judgment was signed on August 6, 1993, pursuant to both party's oral stipulation, that the Gautreaus, among other things, were to undergo random drug and alcohol testing and refrain from denigrating the other spouse. In addition, Ms. Gautreau was to undergo a substance abuse assessment and evaluation as well as submit to any recommended treatment. In contemplation of such treatment, the parties orally stipulated to a joint custody arrangement.
On September 24, 1993, the trial court issued an order granting Mr. Gautreau temporary custody. Prior to that date, Ms. Gautreau *1343 had taken the children to Monroe, Louisiana. While Ms. Gautreau appears to have received the court's permission to take the children out of the jurisdiction, there was testimony that Ms. Gautreau called Mr. Gautreau from Monroe and stated that he would never see his children again. In addition, Mr. Gautreau submitted two affidavits from persons who stated that they had seen Ms. Gautreau on two separate occasions driving or attempting to drive a vehicle while intoxicated. On both occasions, Ms. Gautreau also had one or more of her children with her. It was upon these actions that the trial court based its decision to award Mr. Gautreau temporary custody of the children.
On October 7, 1993, Ms. Gautreau was again arrested for DWI, possession of marijuana, and possession of Xanax®, a prescription drug. Several motions pertaining to custody of the children were filed, including a motion to remove Dr. Lowe as the court appointed psychologist. The trial court denied the motion to remove Dr. Lowe due to the impact that such a change would have had on the children. The other motions were deferred until trial. A trial on this matter was held on April 21, 1994, and continued on July 26-28, 1994. On August 3, 1994, the trial court entered a judgment partitioning the community and granting Mr. Gautreau sole custody of the minor children, with supervised visitation for Ms. Gautreau. It is from this judgment that Ms. Gautreau now appeals.

ASSIGNMENTS OF ERROR
Ms. Gautreau, appellant, claims the trial court erred in:
1. Rescinding the judgment of dismissal executed on June 14, 1993, in Docket Number 93-2370 and improperly ordering that all pleadings filed after June 16, 1993 be assigned to a dismissed suit file.
2. Granting full custody to Mr. Gautreau and only supervised visitation to Ms. Gautreau.
3. Allowing the admission of Trooper Durling's testimony into the record.
4. Ordering Ms. Gautreau to pay child support to Mr. Gautreau in the amount of $890.78 per month, by using 1992 income information for a 1996 award, by making the award retroactive, by not following the guidelines of La.R.S. 9:315, et seq. and by not giving Ms. Gautreau an offset for the four months that she had custody of the minor children.
5. Failing to remove Dr. Warren Lowe as the court appointed psychologist.
6. Failing to hold the income of Ms. Gautreau to be the results of labor or otherwise as reserved in a matrimonial agreement and declaration of paraphernality of her separate property.
7. Holding that Ms. Gautreau was responsible for one-half of the taxes due for 1991, 1992, and five months of 1993.
8. Holding that the property and domicile, located at 208 Ruthwood Drive, Lafayette, Louisiana, was community property.
9. Classifying the property and home, located at 406 Courtney Drive, Duson, Louisiana, as community property.
10. Classifying the 1990 red Chevrolet pickup truck as community property.
11. Granting or allowing reimbursement to Mr. Gautreau for one-half of the payments that he made on the 1990 red Chevrolet pickup truck and one-half of the expenses for the maintenance and upkeep of the pickup truck during the time of his exclusive use after the termination of the community.
12. Granting several reimbursements to Mr. Gautreau which were for ordinary maintenance of the domicile in which he lived after the termination date of the community.
13. Holding Ms. Gautreau responsible for all costs except those costs associated with the community property partition.

LAW
In her first assignment, Ms. Gautreau asserts that the trial court erred in rescinding the judgment of dismissal executed on June *1344 14, 1993, in Docket Number 93-2370, and improperly ordering that all pleadings filed after June 16, 1993, be assigned to a dismissed suit file.
Mr. Gautreau filed suit for divorce on May 27, 1993. This suit was filed as Docket No. 93-2370-E-D. On June 13, 1993, before any responsive pleadings had been filed by Ms. Gautreau, Mr. Gautreau filed a motion to dismiss suit No. 93-2370-E-D, and filed another petition which was given Docket No. 93-2680-J-C. Judge Edward D. Rubin then signed an order dismissing Docket No. 93-2370-E-D without prejudice.
On November 3, 1993, Ms. Gautreau filed a Motion to Strike Pleadings and Discovery, Set Aside Hearing Notices, and to Vacate Orders and Judgments. In her motion, she asserted that all of the orders and judgments filed after June 14, 1993, were null and void because they were filed in a dismissed suit, namely, 93-2370-E-D. She objected to the original dismissal and the filing of the second suit. After conferring, Judge Byron Hebert and Judge Rubin issued an order in Docket No. 93-2680-J-C, reassigning the case back to Division "D." A hearing on this matter was held November 8, 1993, with a judgment signed on December 6, 1993.
In its written reasons for ruling, the trial court held that, based on the record before it, the trial court had intended to "reassign" Docket No. 93-2680-J-C back to where it was originally brought, that is, Docket No. 93-2370-E-D. Judges Hebert and Rubin executed an amended order clarifying the intent and meaning of the June 16, 1993, order. In addition, the trial court noted that both parties continued to file numerous pleadings under Docket No. 93-2370-E-D, and neither party had suffered any prejudice as a result of this case being reassigned to Docket No. 93-2370.
Ms. Gautreau argues that the December 6, 1993 judgment and its holding, that Judges Hebert and Rubin intended to "reassign" this case back into Docket No. 93-2370-E-D, were error.
We note that, as a final judgment, Ms. Gautreau's remedy for such an assertion should have properly been to file a writ. Because she did not do so and waited almost three and a half years to appeal, her appeal on this matter is untimely and not properly before this court. As such, we need not address this assignment of error further.

CUSTODY
In her second assignment, Ms. Gautreau asserts that the trial court erred in granting full custody to Mr. Gautreau and only supervised visitation to her.
"In a proceeding for divorce or thereafter, the court shall award custody of a child in accordance with the best interests of the child." La.Civ.Code art. 131. In the absence of an agreement between the parents as to custody, "or if the agreement is not in the best interests of the child, the court shall award custody to the parents jointly; however, if custody in one parent is shown by clear and convincing evidence to serve the best interests of the child, the court shall award custody to that parent." La.Civ.Code art. 132.
Factors to be considered in determining the best interest of the child are provided in La.Civ.Code art 134:
The court shall consider all relevant factors in determining the best interest of the child. Such factors may include:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other medical needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.

*1345 (8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.
"The wording of Article 134 illustrates that the court is not bound to make a mechanical evaluation of all factors listed." Breaux v. Breaux, 96-214, p. 4 (La.App. 3 Cir. 7/17/96); 677 So.2d 1106, 1108. Rather, "[e]ach case should be decided on its on [sic] facts in light of these factors." Id. Absent a clear showing of an abuse of discretion, an award of custody by a trial court will not be disturbed. Mayeux v. Mayeux, 93-1603 (La.App. 3 Cir. 6/1/94); 640 So.2d 686.
Ms. Gautreau's argument in support of her assertion that the trial court erred in granting Mr. Gautreau sole custody centers around her assertion that, prior to her children being taken on September 27, 1993, she was responsible for all of the children's needs and that "there was no evidence that she did anything to harm her children in any way." Ms. Gautreau further states, in her brief, that there is no evidence that she has ever done anything to violate the orders of the court "regarding the children," and that she "strictly obeyed the orders of the court." However, the evidence contained in the record does not support this assertion.
When making custody determinations, the best interests of the child are paramount. As can be seen from Article 134, the factors listed are very wide ranging and encompass all aspects of a child's life. This includes not only physical well being, but also the overall emotional well being of the children. Thus, when Ms. Gautreau states that she has never done anything to violate the orders of the court "regarding the children," she misunderstands that all of the orders of the court are made with regard to the children.
In its written reasons for judgment, the trial court stated that "[t]here is no doubt that she loves her children, however, the court is of the opinion that she allows the problems of her marriage and divorce to blind her to the realities of her relationship with her children." We agree. Dr. Warren Lowe, the court appointed psychologist, testified that Ms. Gautreau's refusal to put aside her differences with Mr. Gautreau has had a significant impact on the children. Dr. Lowe stated that Ms. Gautreau's denigration of Mr. Gautreau is the "primary problem" and that once it would stop, he hoped to resume a normal pattern of visitation. Additionally, he addressed all of the Article 134 factors in determining that the children should stay in the custody of Mr. Gautreau.
While the trial court did not specifically apply the Article 134 factors to Ms. Gautreau, it is clear from the written reasons for ruling that the court was very concerned not only with the ongoing denigration of Mr. Gautreau, but with Ms. Gautreau's drinking and drug use as well. While Ms. Gautreau seems to assert that she had no problems prior to the break up of her marriage, this is not dispositive of the issue.
What is dispositive is that Ms. Gautreau was not following the court's orders and that this failure has caused significant disruption in her children's lives. Dr. Lowe further testified that, given the disruptive results of the earlier split in custody, it was in the best interest of the children not to order joint custody until the situation had changed. As such, we find no error in the trial court's determinations as to the custody of the three children.
While we uphold the trial court's determinations, we believe it important to put these determinations into perspective. When Ms. Gautreau's counsel questioned Dr. Lowe about his recommendations, Dr. Lowe stated that he had attempted to resume visitation by Ms. Gautreau, but that that visitation was adversely affecting the children to a significant degree, and he could not recommend that it continue under the current circumstances, however, he would like to see the *1346 children have a productive relationship with their mother. Both the trial court and Dr. Lowe were of the opinion that once the dissension between the parties lessened, progress could be made to facilitate a more amicable custody arrangement.

ADMISSION OF TESTIMONY
In her third assignment, Ms. Gautreau asserts that the trial court erred in allowing the admission of Trooper Durling's testimony into the record. Specifically, she argues that Trooper Durling was not at the scene of the accident about which he testified, thus his testimony about the police report was hearsay.
La.Code Evid. Art. 1101(B)(2) states that, in child custody cases, the specific exclusionary rules contained in the code of evidence "shall be applied only to the extent that they tend to promote the purposes of the proceeding." Further, our jurisprudence has consistently held that whether evidence is relevant and admissible is within the discretion of the trial judge. His rulings will not be disturbed on appeal in the absence of a clear abuse of his discretion. Citizens Bank & Trust Co. v. Consolidated Terminal Warehouse, Inc., 460 So.2d 663, 670 (La.App. 1st Cir.1984).
After viewing the record, we find no such abuse of discretion by the trial court. This assignment of error is likewise without merit.

CHILD SUPPORT
In her fourth assignment, Ms. Gautreau asserts that the trial court erred in ordering her to pay child support to Mr. Gautreau in the amount of $890.78 per month, by using 1992 income information for a 1996 award, by making the award retroactive, by not following the guidelines of La. R.S. 9:315, et seq., and by not giving Ms. Gautreau an offset for the four months that she had custody of the minor children. Ms. Gautreau makes two arguments. First, she argues that, since the children were removed from her custody on September 27, 1993, her parental rights have been terminated de facto. Second, she argues that the trial court erred in finding her voluntarily unemployed and basing her child support payments on her salary from 1992.
Ms. Gautreau's first assertion, that her parental rights have been terminated de facto is without merit. In State in Interest of A.C., 93-1125, p. 9 (La.1/27/94); 643 So.2d 719, 726 the supreme court held that:
custody and visitation are only part of the parcel of parental rights. The change in custody and visitation caused by a court order ... is "subject to any residual parental rights and responsibilities." La.Ch. Code art.1511.
Those residual rights include, but are not necessarily limited to, the right of visitation, consent to adoption, the right to determine religious affiliation, responsibility for support, and the right of inheritance. La.Ch. Code art. 116. The court did not terminate Ms. Gautreau's parental rights de facto by removing the children from Ms. Gautreau's custody.
In her second argument, Ms. Gautreau asserts that the trial court erred in finding her voluntarily unemployed and basing her yearly income on the income she received in 1993. La.R.S. 9:315(6)(a)-(b) define income as:
(a) Actual gross income of a party, if the party is employed to full capacity; or
(b) Potential income of a party, if the party is voluntarily unemployed or underemployed. A party shall not be deemed voluntarily unemployed or underemployed if he or she is absolutely unemployable or incapable of being employed, or if the unemployment or underemployment results through no fault or neglect of the party.
Ms. Gautreau argues that she is unable to earn as much money now as she did through her employment with Strataform, Inc., as that was the family business and her salary was paid by her father. However, the trial court, found that while Ms. Gautreau was employed by Strataform, Inc., she also managed a number of other properties. Based on the work she did for Strataform, Inc. and the work done on these separate properties, the trial court found that she had the skills which would allow her to earn income to support her children.
*1347 Because Ms. Gautreau did not work a full year in 1993, the court determined what her income would have been for 1993 by adjusting the amount to compensate for the two and a half months she did not work in 1993. It then compared her income for all of 1992 and found that a salary of $36,146.00 was in line with what she would have earned for the full year 1993.
The trial court is vested with much discretion in fixing the amount of child support and such an award will not be disturbed on review unless there has been a clear abuse of this discretion or manifest error in his factual appreciations. Hyams v. Hyams, 365 So.2d 527 (La.App. 3 Cir.1978). Here, Ms. Gautreau has not shown that the trial court's factual determinations as to her voluntary unemployment, or the amount imputed as salary, was manifestly erroneous. Therefore, we uphold its determination.

REMOVAL OF COURT APPOINTED PSYCHOLOGIST
In her fifth assignment, Ms. Gautreau asserts that the trial court erred in failing to remove Dr. Warren Lowe as the court appointed psychologist. Specifically, she argues that he was not a neutral and detached expert.
Initially, the choice of Dr. Lowe was agreed to by both parties. It was not until Dr. Lowe began to make decisions which were adverse to Ms. Gautreau that she sought to have him removed. Testimony at trial established that he had always recommended that the children spend time with her. The testimony also established that it was Ms. Gautreau's actions, and not those of Dr. Lowe, which precipitated the court's order that visitation be supervised. Furthermore, Dr. Lowe testified at trial that removing the children from his care at this late stage of the proceedings would only cause their problems to worsen, and that what the children needed most at this time was stability.
While another psychologist, hired by Ms. Gautreau, Dr. Lecorgne, did not agree with all of Dr. Lowe's decisions regarding visitation, he also did not have all of the information that Dr. Lowe had. Dr. Lecorgne's testimony established that Ms. Gautreau had not informed him about many of the criminal charges and incidents stemming from her use of alcohol and drugs and that had he known this information, his opinion may have been different.
When the trial court gives greater weight to the testimony of one expert over another, it will not be reversed absent manifest error. Based upon a thorough reading of the record, we find no such error, and this assignment is without merit.

MATRIMONIAL AGREEMENT AND DECLARATION OF PARAPHERNALITY
In her sixth assignment, Ms. Gautreau asserts that the trial court erred in failing to hold her income, as reserved in a matrimonial agreement and declaration of paraphernality, as her separate property. In a Matrimonial Agreement and Declaration of Paraphernality, signed February 12, 1982 and filed in the Lafayette Parish public records, Ms. Gautreau declared that:

although a community property regime will exist under the law of Louisiana between herself and her future husband, that she owns paraphernal property donated her by her father, James P. Spillers, which includes, but is not limited to, stock in South Bastrop Maintenance Company, together with annual cash and other donations to her individually, that in accordance with the provisions of 2339 of the Civil Code of Louisiana ..., she hereby reserves all fruits of her paraphernal property, wherever located and however administered, whether such fruits be natural or civil, including interest, dividends, and rents, or from the result of labor or otherwise, for her own separate use and benefit and that it is her intention to administer such property separately and alone, and any future investments made by her with said fruits and/or annual cash or other donations from her father and/or mother shall retain its separate status, and be administered for her separate use and benefit by her alone.
(Emphasis added.) The agreement further stated that Brian Gautreau:

*1348 recognizes his future wife's Declaration of paraphernality of all stocks issued in her name directly and indirectly coming from her father in South Bastrop Maintenance Company, together with any and all annual cash donations which have been previously made, and concurs in his future wife's right to manage said property independently, for her separate and paraphernal use and benefit, and hereby recognizes that any and all properties which may be purchased from said fruits and revenues, whether such fruits be natural or civil, including interest, dividends and rents, or from the annual cash donations of her father and/or mother, or the results of labor or otherwise, are separate of his future wife.
In its ruling, the trial court stated that:
It is the opinion of this court that the salary Ms. Gautreau earned from Strataform, Inc. is not a fruit as defined in the declaration and does not fall within the parameters of the agreement. Therefore, the salary was not separate property during the existence of the marriage.
As can be seen, the trial court did not specifically enunciate its reasons for finding that the salary earned by Ms. Gautreau was not a "fruit" as contemplated by the agreement. Nonetheless, if a judgment of a trial court is correct, it should be affirmed on appeal, regardless of what may have been a trial court's reasoning for rendering the judgment. Riche v. Ascension Parish Sch. Bd., 200 So. 681 (La.App. 1 Cir.1941).
On January 1, 1980, the new matrimonial regimes legislation, enacted in 1979, came into effect. As such, the current code provision which applies is La.Civ.Code art. 2339. It states, in pertinent part:
The natural and civil fruits of the separate property of a spouse ... and bonuses, delay rentals, royalties, and shut-in payments arising from mineral leases are community property. Nevertheless, a spouse may reserve them as his separate property by a declaration made in an authentic act or in an act under private signature duly acknowledged.
While La.Civ.Code art. 2339 is the applicable article, the wording of the January 13 agreement is almost identical to former Louisiana Civil Code Article 2386, which stated, in pertinent part:
The fruits of the paraphernal property of the wife, wherever the property may be located and however administered, whether natural, civil, including interest, dividends and rents, or from the result of labor, fall into the conjugal partnership, if there exists a community of acquets and gains; unless the wife, by a written instrument, shall declare that she reserves all of such fruits for her own separate use and benefit and her intention to administer such property separately and alone.
Because the wording of the February 12, 1982 agreement is almost identical to the old article 2386, we find that jurisprudence interpreting that article is helpful in interpreting the language of the agreement in the instant case.
In Paxton v. Bramlette, 228 So.2d 161 (La.App. 3 Cir.1969), this court was faced with a case similar to the present one. In Paxton, the wife, Ms. Bramlette, filed a written instrument, declaring her intention to administer her paraphernal property for her separate benefit. The question presented in Paxton, and the question presented in this case, was whether salary income derived from separate property constituted a "fruit" as contemplated by the agreement and the Civil Code. In Paxton, the court noted that:
if the revenue received was the result of substantial capital investment with relatively little labor, it would be a fruit governed by Article 2386; but if the revenue represents the return on substantial labor with relatively little capital investment, it would be earnings governed by Article 2334.
Id. at 163, citing 24 La.Law rev. at pg. 104. In the present case, for example, if Ms. Gautreau's income from Strataform, Inc. resulted from her investment in the company, and not her labor, then the income would be separate property. However, if the income derived from Strataform, Inc. was substantially a result of her labor, then the income is considered community property.
She asserts that her salary from Strataform falls under the "from the result of labor or *1349 otherwise" language in the agreement. We agree with the trial court that this language refers to the civil and natural fruits of the separate property and not to any salary earned by Ms. Gautreau. In other words, the income must have been a "revenue[] derived from a thing by operation of law or by reason of juridical act, such as rentals, interest, and certain corporate distributions." La.Civ.Code art. 551.
If Ms. Gautreau's income was derived from her interest in Strataform or as the result of certain corporate distributions or as a result of an increase in the value of Strataform due to her labor, then the income is separate property. However, if the income from Strataform is not derived by virtue of her ownership interest in Strataform but rather is a result of her "effort, skill, or industry," then the income is community property. We, further, note the parties intent to maintain an overall community property regime but for "fruits."
Notwithstanding, based on the record before us, we cannot determine the source of the income Ms. Gautreau derived from Strataform. A similar issue was faced by the second circuit in Kyson v. Kyson, 596 So.2d 1308 (La.App. 2 Cir.1991); writ denied, 599 So.2d 314 (La.1992). In Kyson, the defendant husband received income from separate rental property he owned, managed, and oversaw. He argued that, under an affidavit of separation of property, the income was also separate property. On the contrary, Ms. Kyson argued that the income derived from the rental property was produced primarily as a result of his effort, skill, or industry, thus making it community property. In deciding the matter, the court stated:
Fruits are "things that are produced by or derived from another thing without diminution of its substance." Civil code examples of natural fruits are "products of the earth or of animals." Civil fruits include "revenues derived from a thing by operation of law or by reason of a juridical act, such as rentals, interest, and certain corporate distributions." In the simplest case, production of these fruits would not involve labor or industry of a spousethe typical passive investment. However, it is quite common for many investments to combine one spouse's separate capital with community labor to produce fruits. In such an instance, proration is necessary and an often less than precise allocation is required.
Id. at 1311, (citing 16 K. Spaht and W.L. Hargrave, Louisiana Civil Law Treatise, "Matrimonial Regimes" Sec. 3.5 at 48 (1989)). The court went on to hold that:
While Paxton was decided under prior law, namely LSA-C.C. Art. 2386, we find that the rationale underlying this decision is persuasive to a resolution of the case at hand. Mr. Kyson, by his own admission, engaged in the trade of rental manager. He spent much of his time taking care of that property and seeing to it that it was properly managed. At no time did he hire any other property manager to do the work. As such, this investment combined Mr. Kyson's separate capital with his community labor which resulted in the production of fruits. Like in Paxton, he performed "substantial services" to this rental business which derived from his labor and industry. Certainly, however, even if Mr. Kyson had not participated in the rental management he would have received some rentals as a passive investment. We find this to be a case in which "separate capital is combined with community labor to produce fruits." Thus, a determination must be made as to the amount of labor attributed to the investment. An appropriate analysis is to examine the relative contributions of labor and capital to the funds involved and a proration of the funds according to these contributions [as in Paxton]. Considerations include, the employee's qualifications, the nature of the employee's work, size and complexity of the business, comparison of salaries paid in comparison with gross and net income, prevailing economic conditions, prevailing rates of compensation for comparable positions, salary policy of employer as to all employees and comparison with salaries for previous years. Unfortunately, we are unable to determine from the record before this court the value of Mr. Kyson's labor in order that the required proration *1350 of funds can be made. We therefore find it necessary to remand to the trial court for this determination based upon the aforementioned considerations. While the passive rental income remains separate property after the filing of the declaration by Mr. Kyson, the value of his labor invested in producing the passive rentals is community property in accordance with LSA-C.C. Art. 2338 and is subject to Mrs. Kyson's claim.
Id. at 1311-12. (Footnotes & citations omitted).
We agree with the reasoning of the court in Kyson and likewise remand this case to the trial court for a determination of the source and value of the income derived from Ms. Gautreau's labor.

ALLOTMENT OF TAX LIABILITY FOR THE COMMUNITY
In her seventh assignment, Ms. Gautreau asserts that the trial court erred in holding that she was responsible for one-half of the taxes due for 1991, 1992, and five months of 1993. We do not agree. In its written reasons for judgment, the trial court found the net value of the community to be $116,476.25. In the allotment of assets and liabilities, the trial court held Ms. Gautreau responsible for a total of $12,512.79 in liabilities, including $6,965.00 in federal taxes, and awarded her $10,756.50 in community assets. It found Mr. Gautreau responsible for $20,401.13 in community liabilities and awarded him $50,318.00 in community assets. The difference in the amounts awarded, as the trial court stated, is due to the value of the property at 208 Ruthwood, which was not allotted to either party. The trial court ordered the property sold at private sale, with the proceeds used to equalize any amount owed by either party.
We find no error in this allocation and uphold the trial court's determinations.

208 RUTHWOOD DRIVE PROPERTY
In her eighth assignment, Ms. Gautreau asserts that the trial court erred in holding that the property and domicile located at 208 Ruthwood Drive, Lafayette, Louisiana, was community property. Ruthwood was purchased with funds derived from the sale of 407 Courtney, thus, we must analyze the makeup of the Courtney property to address this assignment.
On August 10, 1989, Ms. Gautreau purchased the property at 407 Courtney for $8,000.00, by a cash sale and in her name. Mr. Gautreau acknowledged that it was being purchased by her as her separate property.
Generally, property is classified as either community or separate. As the supreme court stated in Curtis v. Curtis, 403 So.2d 56, 57-59 (La.1981):
While other community property states may categorize property paid for in part with separate funds and in part with community funds as mixed, Louisiana does not do so. Under our law property is characterized as either community or separate. The Civil Code articles applicable to this case (as they existed before revision by La. Acts 1978, No. 627 and La. Acts 1979, No. 317) created a strong presumption that all property acquired during the existence of a marriage fell into the community of acquets and gains. C.C. 2402.
However, this presumption was rebuttable. A married person could acquire separate property during marriage by inheritance, by donation, or by acquisition with separate funds. C.C. 2334. The jurisprudence established that the burden of overcoming the presumption in favor of the community rested on the party asserting the separate nature of the property. The husband who took title in his name was required to declare in the act of sale that he was purchasing with his separate funds for his separate estate; if he failed to make such a declaration, title was presumed to be in the community, and he was barred from presenting evidence to rebut the presumption.
....
This court has held on several occasions that a husband who declares in a deed that his wife is buying property for her separate estate with her separate funds cannot later dispute the separate nature of the property, even if it was bought on credit. These cases, among others, also establish that property declared to be separate at *1351 acquisition does not change character if a subsequent credit payment is made with community funds. Proof that the community contributed to the purchase of separate property would only create a debt on the part of the wife's separate estate to the community for the amount of community funds used. It would not convert the property or any portion of it to community property. Only when community and separate funds are mingled in the initial acquisition may the property be regarded as community. We have stated in cases involving bank accounts that the mere mixing of separate funds and community funds in the same account does not of itself convert an entire account into community property; only when separate funds are commingled with community funds indiscriminately so that the separate funds cannot be identified or differentiated from the community funds are all the funds characterized as community funds.
(Citations and footnote omitted). Footnote four in Curtis recognized that under La.Civ. Code arts. 2338 and 2341, that "property purchased with both separate and community funds would appear to be community property, unless the amount of community funds used is inconsequential in comparison with the amount of separate funds used." Id. at 59 n. 4.
La.Civ.Code art. 2341 defines separate property and provides that:
The separate property of a spouse is his exclusively. It comprises: property acquired by a spouse prior to the establishment of a community property regime; property acquired by a spouse with separate things or with separate and community things when the value of the community things is inconsequential in comparison with the value of the separate things used; property acquired by a spouse by inheritance or donation to him individually; damages awarded to a spouse in an action for breach of contract against the other spouse or for the loss sustained as a result of fraud or bad faith in the management of community property by the other spouse; damages or other indemnity awarded to a spouse in connection with the management of his separate property; and things acquired by a spouse as a result of a voluntary partition of the community during the existence of a community property regime.
Both parties acknowledged that the property at 407 Courtney was purchased with Ms. Gautreau's separate funds. Thus, on August 10, 1989, it was her separate property. Furthermore, due to his acknowledgment that the property was purchased with Ms. Gautreau's separate funds, Mr. Gautreau is estopped from asserting that, on August 10, 1989, 407 Courtney was not Ms. Gautreau's separate property.
The testimony established that, subsequent to August 10, 1989, the property rose in value due to substantial improvements made by the Gautreaus and others. La.Civ. Code. art. 2368 states that:
If the separate property of a spouse has increased in value as a result of the uncompensated common labor or industry of the spouses, the other spouse is entitled to be reimbursed from the spouse whose property has increased in value one-half of the increase attributed to the common labor.
Thus, based on Article 2368, had the community terminated while Ms. Gautreau still owned 407 Courtney, Mr. Gautreau would be entitled, upon termination, to reimbursement for one-half of the increase in value attributable to the common labor. However, the community did not terminate during the time period that Ms. Gautreau owned 407 Courtney. On October 16, 1990, it was sold for $37,000.00. The proceeds of the sale, after expenses, totaled $33,314.69 and were deposited into a joint checking account the Gautreaus had at Shearson/Lehman.
As the supreme court stated in Curtis, separate property does not change classification based solely on commingling with community property. In Succession of Davis, 496 So.2d 549, 552, (La.App. 1 Cir. 1986), the court held that:
Comment (c) to this provision [art. 2341] states that the principle of real subrogation is applicable to both separate and community property. Thus, when a thing forming part of the separate property of a spouse is converted into another thing, the *1352 mass of the separate property is not diminished. The new thing takes the place of the old: "Subrogatum capit naturam subrogati."

(Citations omitted). Thus, property is properly regarded as community "only when the community and separate funds are mingled in the initial acquisition," or "when separate funds are commingled with community funds indiscriminately so that the separate funds cannot be identified or differentiated from the community funds." Curtis, 403 So.2d at 59. Therefore, when 407 Courtney was sold, and Ms. Gautreau combined her separate funds from the sale with the couple's community funds from their common labor into their joint Shearson/Lehman account, each retained its prior classification as either separate or community.
On April 24, 1991, Ms. Gautreau transferred the $29,098.49 from the joint Shearson/Lehman account to her separate account. As cited earlier, La.Civ.Code art. 2341 states that, among other things, separate property comprises "property acquired by a spouse with separate things or with separate and community things when the value of the community things is inconsequential in comparison with the value of the separate things used." (Emphasis added). Further, comment (b) states that "the value of the community things at the time of acquisition should be used for determining whether it is "inconsequential" in comparison with the value of the separate things used." For example, this court, in Lambert v. Lambert, 480 So.2d 784, (La.App. 3 Cir.1985), found that $3,000.00 of community funds used to purchase a digital camera was not inconsequential when compared to the $6,000.00 in separate funds used. As such, the camera was properly classified as community property.
On April 24, 1991, the commingled funds, derived from the sale of 407 Courtney and transferred to Ms. Gautreau's separate account, were withdrawn and used to purchase the "Ruthwood lot." The Ruthwood lot was purchased in the names of Mr. & Ms. Gautreau and no declaration of paraphernality was contained in the act of sale. The trial court correctly held that the funds used to purchase the Ruthwood lot were commingled separate and community funds; again, based on the principle that separate property, under La.Civ.Code art. 2341, comprises "property acquired by a spouse ... with separate and community things when the value of the community things is inconsequential in comparison with the value of the separate things used." The trial court found that, after expenses, when the separate and community funds realized from the sale of 407 Courtney were used to purchase the Ruthwood lot, 77% of the funds used were community funds. Based on Lambert, this is not an "inconsequential" amount. Therefore, the trial court did not err, and this assignment is without merit.

PROPERTY AT 406 COURTNEY DRIVE
In her ninth assignment, Ms. Gautreau asserts that the trial court erred in classifying the property and home located at 406 Courtney Drive, Duson, Louisiana as community property. Specifically, she argues that her mother, Gwen Spillers, provided $10,000.00 dollars of the down payment on the property, and, as such, those funds were her separate property since they comprised a donation to her. Ms. Spillers testified that the $10,000.00 was a loan and, if it were a gift, that it was a gift to Ms. Gautreau alone, and not to Mr. Gautreau. However, Mr. Gautreau testified that the money was a gift to him and Ms. Gautreau, because Ms. Spillers could give that exact amount away, $10,000.00, tax free.
In domestic relations cases, a trial judge's determinations of fact are entitled to great weight on appeal and will not be disturbed unless manifest error is shown. Morris v. Morris, 336 So.2d 254 (La.App. 1 Cir.1976). Where there is conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. Canter v. Koehring Company, 283 So.2d 716 (La.1973). After reviewing the record, we find no manifest error in the trial court's determination. While the testimony was conflicting, Mr. Gautreau's testimony was not unbelievable, and the court had ample reason to find that the money was a gift to him and his wife.
*1353 Because we find no error in the trial court's finding of fact on this matter, we need only apply the same reasoning used in assignment of error number eight. As a gift to him and his wife, the $10,000.00 is classified as community property, and things acquired with both community and separate funds are community unless the value of the community thing used is inconsequential when compared with the value of the separate thing. The trial court determined that the initial down payment on the house was made with 63% separate funds, and 37% community funds. We agree with the trial court that 37% of the funds used is not an inconsequential amount. Therefore, we find that the trial court did not err in determining that 406 Courtney was community property.

OWNERSHIP OF PICKUP TRUCK
In her tenth assignment, Ms. Gautreau asserts that the trial court erred in classifying the 1990 red Chevrolet pickup truck as community property. Specifically, she asserts that the $3,000.00 down payment, as well as several other payments on the vehicle came from her separate checking account. The trial court held, and the evidence showed, that: (1) both party's names appeared on the title to the vehicle, (2) all of the payments on the truck, except three, were made with community funds, and (3) that the separate account, from which Ms. Gautreau claims payments were made, actually contained the income she received from Strataform, Inc., rendering these sums community funds due to commingling.
While the down payment on the pickup truck was arguably made with separate funds, both Mr. and Ms. Gautreau's names appear on the title, the truck was used for the benefit of the community, and no decree of paraphernality was introduced. The trial court also noted that Ms. Gautreau listed the truck as community property.
The trial court held that the truck was acquired with both community and separate funds since the payments after the down payment were made with community funds. Accordingly, it held that the truck was a community asset acquired with both separate and community funds. The trial court then applied the Lambert analysis and La.Civ.Code art. 2338 in holding that the community funds used to acquire the vehicle were not inconsequential in relation to the separate funds used. Therefore, it properly concluded that the truck was a community asset.
While the court correctly determined the truck to be a community asset, Ms. Gautreau's separate money was used as the down payment. La.Civ.Code art. 2365 states, in pertinent part:
If separate property of a spouse has been used to satisfy a community obligation, that spouse, upon termination of the community property regime, is entitled to reimbursement for one-half of the amount or value that the property had at the time it was used.
The trial court properly applied this article and ordered Ms. Gautreau to be reimbursed for payments made by her on the truck.
Based on the analysis of assignment of error number eight, we find no merit in this assignment and affirm the judgment of the trial court.

REIMBURSEMENT FOR PAYMENTS AND MAINTENANCE ON TRUCK
In her eleventh assignment, Ms. Gautreau asserts that the trial court erred in granting or allowing reimbursement to Mr. Gautreau for one-half of the payments that he made on the 1990 red Chevrolet pickup truck and one-half of the expenses for the insurance, maintenance and upkeep of the pickup truck during the time of his exclusive use after the termination of the community.
In Gachez v. Gachez, 451 So.2d 608 (La. App. 5 Cir.1984) and Davezac v. Davezac, 483 So.2d 1197 (La.App. 4 Cir.1986), the courts held that, while general rules of co-ownership apply after termination of the community, it would be inequitable to allow one spouse exclusive use of a community automobile, that is, the exclusive use and enjoyment of the thing, while at the same time requiring the other spouse to reimburse the spouse with sole use. Both cases held that, because automobiles tend to depreciate in value over time, the use of the vehicle is directly related to its depreciation.
*1354 Based on the foregoing, we find that the trial court committed error in requiring Ms. Gautreau to reimburse Mr. Gautreau for the expenses of maintaining and insuring the truck.[1] Accordingly, we reverse this part of the judgment.

REIMBURSEMENT FOR MAINTENANCE OF DOMICILE
In her twelfth assignment, Ms. Gautreau asserts that the trial court erred in granting several reimbursements to Mr. Gautreau which were for ordinary maintenance of the domicile in which he lived after the termination date of the community. In Jones v. Jones, 605 So.2d 689, 693 (La.App. 2 Cir.), writ denied, 607 So.2d 571 (La.1992), the court stated that the costs of replacement carpet and stove as well as painting and plumbing bills may be recovered "only if the person claiming reimbursement can prove both that the work was necessary and that the value of the property was enhanced thereby."
Regarding these expenses, Mr. Gautreau was questioned on each item, and testified as to the necessity of the expense and its enhancement of the property. The trial court held that Mr. Gautreau met his burden of proof. Our reading of the record supports this determination. Therefore, this assignment lacks merit.

ASSESSMENT OF COSTS
In her final assignment, Ms. Gautreau asserts that the trial court erred in holding her responsible for all costs except those costs associated with the community property partition.
In its written reasons for judgment, the trial court held that this case involved two main issues: partition of the community and custody of the minor children. While the trial court found both parties responsible for the costs of partition of the community, it also found the length and amount of litigation relating to the custody matters to be a direct result of the efforts of Ms. Gautreau.
It is well settled that a trial court has much discretion in the determination of costs. Berzins v. Betts, 457 So.2d 282 (La.App. 3 Cir.1984). After a thorough reading of the record, we do not find that trial court's assessment to be an abuse of discretion. As such, this assignment of error lacks merit.

CONCLUSION
For the foregoing reasons, we refuse to consider appellant's argument concerning pleadings filed after June 16, 1993, being assigned to a suit which had been dismissed. We reverse that portion of the trial court's judgment which requires Ms. Gautreau to reimburse Mr. Gautreau for one-half of the payments he made on and one-half of the insurance, maintenance and upkeep expenses he incurred in connection with the red pick-up truck after termination of the community. And, we remand to the trial court so that it may be determined whether Ms. Gautreau's income was community or her separate property. In all other respects, the judgment of the trial court is affirmed.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
YELVERTON, J., concurs.
NOTES
[1] The first circuit does not share this view. In Williams v. Williams, 509 So.2d 77 (La.App. 1 Cir.1987), that court found that the vehicular debt was a debt of the community which had been paid from the appellant's separate estate. They saw no reason to deny the appellant reimbursement for one-half of his separate property used to pay the note on the vehicle. The court committed that Article 2365 does not make a distinction between movable and immovable property, which is a view that I share.

Departing from the plain language of Artice 2365 of the Civil Code to render what seems to be an equitable decision in one situation can have unintended consequences later for the whole body of law, completely usurping the legislative function. The logic, employed in the line of cases holding for no reimbursement, dictates that we apply the same rationale to all property which might depreciate and which the party seeking reimbursement has exclusive use. Could this also not mean immovable property in a declining or depressed economy?
Unfortunately, I recognize that this "automobile exception" to Article 2365 is the prevailing view in this circuit and accept it as such.